PACIFIC MUTUAL LIFE INSURANCE COMPANY v. MARTIN C. FRANK.

FILED MARCH 5, 1895. No. 5841.

Accident Insurance: ACTION TO REFORM POLICY: EVIDENCE: AUTHORITY OF AGENT: CIRCULARS: ESTOPPEL. Suit was brought to reform a policy of accident insurance by inserting a provision in accordance with the verbal contract between the insurer's agent and the insured. The provision which it was sought to insert was to the effect that in case of the loss of one foot the insurer would pay one-third of the principal sum. The insurer defended on the ground that its agents were forbidden to write policies of that character in favor of persons already crippled when the policy was written. *Held*, (1) That the evidence sustained a finding for plaintiff; (2) that circulars issued

by authority of the insurer and brought to the notice of the insured before the policy was written were admissible in evidence where they advertised that the insurer wrote policies paying one-third for the loss of one foot, and stated no restrictions as to persons in whose favor such policies should be written; (3) that such circulars were admissible to show that the insurer had held its agent out as authorized to write such policies to all persons; (4) that the insurer having so held out its agent as authorized to write the policy, it is estopped from now denying his authority.

ERROR from the district court of York county.   Tried below before WHEELER, J.

*Charles O. Whedon* and *Charles E. Magoon* for plaintiff in error:

A policy which does not conform to the agreement of the parties, whether by fraud or mistake, may be reformed in equity, and damages for a loss decreed in the same case; but such non-conformance must be conclusively proved. (*Milligan v. Pleasants*, 21 Atl. Rep. [Md.], 695; *Cooper v. Farmers' Mutual Fire Ins. Co.*, 50 Pa. St., 299; *Patterson v. Benjamin Franklin Ins. Co.*, 81 Pa. St., 454; *Mead v. Westchester Fire Ins. Co.*, 64 N. Y., 453; *Bryce v. Lorillard Fire Ins. Co.*, 55 N. Y., 240; *Van Tuyl v. Westchester Fire Ins. Co.*, 55 N. Y., 657; *National Fire Ins. Co. v. Crane*, 16 Md., 260; *Tesson v. Atlantic Mutual Ins. Co.*, 40 Mo., 33; *Hearne v. Marine Ins. Co.*, 20 Wall. [U. S.], 490; *Snell v. Atlantic Fire & Marine Ins. Co.*, 98 U. S., 85.)

Statements in a pamphlet issued by an insurance company cannot affect or modify the strict terms of a policy thereafter issued. (*Fowler v. Metropolitan Life Ins. Co.*, 116 N. Y., 389; *Ruse v. Mutual Benefit Life Ins. Co.*, 23 N. Y., 516; *Mutual Benefit Life Ins. Co. v. Ruse*, 8 Ga., 534; *Smith v. National Life Ins. Co.*, 103 Pa. St., 184; *Knickerbocker Life Ins. Co. v. Heidel*, 8 Lea [Tenn.], 488; *Clark v. Allen*, 132 Pa. St., 40; *Connaway v. Wright*, 5 Del. Ch.,

472; *James v. Clough,* 25 Mo. App., 147, *Dodge v. Kiene,*. 28 Neb., 216.)

*Sedgwick & Power, contra.*

IRVINE, C.

The plaintiff in error opens its brief by stating that this cause comes into this court both on appeal and by petition in error. This is impossible. It has been several times held that in cases which are in their nature appealable a party must elect which remedy to pursue, and will not be permitted to bring up for review the same judgment by both methods. A petition in error naving been filed in this case, and there having been an appearance by the defendant in error, the case will be treated as before us on error and not on appeal. The assignments of error, however, cover all the questions argued, so that the difference in procedure does not affect the result.

Frank sued the insurance company, alleging that on January 8, 1891, he had paid the company $4.50 as the premium for a policy of accident insurance, in consideration whereof the defendant executed and delivered to him a ticket of accident insurance in the sum of $3,000. The policy, or so-called ticket, is then set out at large in the petition. The terms of this policy are for the most part immaterial to a consideration of the case. It purported to insure the person to whom issued for a period of thirty days against death or disability caused by external, violent,. and accidental means, providing for the payment of $3,000 in case of death and a certain sum per week during disability caused by accident. The plaintiff then alleged that it was agreed between the parties at the time the contract was made that in case of loss of one foot by such accident he should be paid one-third of the amount of the insurance named in the policy, to-wit, the sum of $1,000, but by mistake the provision for such payment was omitted

from the ticket; that by agreement the ticket had been left
with the agent of the company after its issuance, and
plaintiff did not see or read it and supposed it contained
this provision in accordance with the terms of the actual
contract; that while the policy was in force plaintiff re-
ceived an injury by being accidentally shot, necessitating
the amputation of one foot.   He then pleaded compliance
with all the terms of the policy and prayed that the policy
be reformed by inserting a clause in accordance with the
oral agreement providing that in case of the loss of one
foot he should be paid one-third of the amount of the
policy, and then prayed judgment for $1,000.   The insur-
ance company admitted issuing the policy, and admitted
the injury sustained by plaintiff, and denied all other alle-
gations in the petition.   For a second defense defendant
pleaded a failure to give proper proofs of loss.   The
company is not now claiming anything by reason of this
defense.   For a third defense the company alleged that
before the issuing of this policy the plaintiff had lost his
right hand and a portion of his right arm; that the com-
pany did not insure any persons who were crippled or
maimed so as to provide for the payment to them in case
of loss of a foot of one-third of the amount of the policy;
and that no agent of the defendant had any authority to issue
a policy so providing to any one so crippled or maimed, or
to make any contract so insuring any one.   The plaintiff
in reply admitted that he had, prior to the issuing of the
policy, lost his right hand and a portion of his right arm,
and averred that at the time the policy was issued the de-
fendant furnished its agents with circulars and advertising
matter representing that the defendant wrote policies of
insurance as stated in the petition, without mentioning any
such restrictions as pleaded in the third defense of the
answer, and that such circulars and advertising matter had
been furnished to plaintiff as a basis of, and inducement to
enter into, the contract of insurance, and that defendant

thereby led the plaintiff to believe that its agents were authorized to make such contracts. There was a finding and judgment for the plaintiff for $1,000.

The argument by the insurance company is not directed to any special assignments of error, but is based on the ground that the evidence did not warrant the court in reforming the policy as prayed. We agree with counsel that in order to authorize a court of equity to reform an instrument purporting to constitute a contract it must be shown by satisfactory evidence that because of mutual mistake the instrument fails to express the contract which was in fact made, but we think the evidence was of such a character as to bring this case within the rule stated, and justified the finding and judgment of the trial court. The evidence shows that the plaintiff was the editor of a newspaper; that he habitually carried a large amount of accident insurance; that the defendant company inserted its advertisements in his paper, and the cost of this advertising was applied to the payment of premiums for insurance issued to him. Some months before this policy was issued he had applied for a policy of accident insurance in the defendant company, and his application was referred to the principal office for action on account of his having lost a hand and a portion of an arm. The policy was finally issued him, and provided among other things that if injuries of the character insured against should, within ninety days, result in the loss of one entire foot, one-third of the principal sum should be paid. This policy was canceled, the agent stating as the reason therefor that for the premium paid on such a policy the company was not willing to carry it when the insured already had so much other insurance. The agent then stated that while this was true the plaintiff could buy accident tickets which would insure him in the same manner as the policy, the agent giving the plaintiff at the same time a circular to the same effect. The premium on a ticket was $4.50 for thirty days, while on the regular

policy it was $25 per year. A ticket was therefore issued to plaintiff but left in the possession of the agent. When this ticket expired another was issued and left in the same manner. These tickets seem to have been left with the agent because of the manner in which accounts were carried between the agent and the plaintiff, the agent retaining the tickets in his possession and charging the premiums against the plaintiff's bills for advertising whenever settlements were had. This procedure went on for some months until plaintiff met with the accident described in the petition, during the currency of one of the tickets. In endeavoring to collect upon this ticket he learned for the first time that it contained no provision for the payment of one-third of the principal sum in case of the loss of a foot. The agent testifies that he supposed throughout the whole proceeding that the tickets did contain such a provision. The evidence shows that both the agent and the plaintiff had a distinct understanding to the effect that the contract was of this character, and if the agent was authorized to make such contract then the case was clearly one of a mutual misunderstanding calling for a reformation by a court of equity. The company proved quite conclusively that agents had no actual authority to issue policies having the provision contended for (which seems to be termed an "eye and limb clause") to persons already crippled or maimed. It was also shown that the company customarily did not issue policies under such conditions. But the question here is not what was the company's custom, or even what was the agent's actual authority, but what did the company do in this case, and what did it hold its agent out as authorized to do? It appears that when the plaintiff's regular policy was canceled, the agent informed plaintiff that he could obtain a ticket of insurance containing the same terms as the circular, which it is proved was issued for distribution by authority of the company, advertising these tickets, and calling special attention to this "eye and limb clause," without

stating that there were any restrictions upon the issuing of such tickets. The defendant contends that this circular was not admissible in evidence, being in the nature of preliminary negotiations not embodied in the final contract. But the effect of the circular in this case is not to engraft foreign provisions upon the policy. It was admissible in evidence, accompanied as it was by proof that it was issued by authority of the company, for the purpose of showing that the company held out its agents as authorized to write policies such as both the agent and the insured thought had been written in this case. Having held out its agent as authorized to write such a policy, the company is now estopped from denying his authority. The judgment of the district court is right and is

AFFIRMED.