DAVENPORT Respondent, v. FIREMEN'S INSURANCE CO. OF NEWARK, N. J., Appellant.

(199 N. W. 203.)

(File No. 5178.   Opinion filed May 28, 1924.)

1. **Appeal and Error—New Trial—Order Granting New Trial Not Generally Disturbed Except for Abuse of Discretion.**

   An order granting a new trial will not in general be disturbed except for abuse of discretion in granting it.

2. **Appeal and Error—New Trial—Grant of New Trial for Improper Exclusion or Admission of Evidence, Not Discretionary.**

   A motion for new trial on the ground that evidence was improperly excluded or admitted, being a question of law, is not addressed to the discretion of the trial court, and its ruling is reviewable.

3. **Insurance—Contracts—Dance Pavilion Attached to Insured Building Held Covered by Building Policy.**

   A $3,000, well-built, lean-to, dancing pavilion, of a permanent character, attached as securely as possible to an insured building, constituted a part of the building, and was covered by the insurance policy on the building.

4. **Evidence—Contracts—Claimed Carbon Copy of Letter to Insurer Held Inadmissible to Show Agreement Not Contained in Policy.**

   In an action on a fire policy, plaintiff's carbon copy of letter, claimed to have been written on request of insured's agent, but not attached to nor indorsed on policy, was not admissible to show any agreement not contained in policy.

5. **Insurance—Principal and Agent—Agent or Officer Cannot Bind Insurance Company by Agreement Outside of Policy.**

   The law, though liberal as to what provisions may be contained in fire policies, requires the entire agreement to be contained or indorsed on the policy, and no officer or agent can bind his company or estop it by any contract or agreement not so included or indorsed.

6. **Evidence—Fire Insurance—Insurance Policy Only Evidence of Contract.**

   The insurance policy is the only competent evidence of the contract between insurer and insured.

7. **Insurance—Jury—Evidence—Whether Removal of Part of Insured Property Increased Physical Hazard Held for Jury.**

   In action on a fire policy, whether insured's removal of a lean-to dancing pavilion, of a permanent character, attached to his building, and heating and plumbing material from his building, increased insurer's physical hazard, held for the jury,

since question depended largely on manner of performance of the removal.

**8.    Insurance—Moral Hazard—What Constitutes "Moral Hazard" Is Question of Law.**

In action on a fire policy, "moral hazard," being risk, or danger, or probability that insured will destroy or permit to be destroyed the insured property to collect the insurance, what constitutes such hazard is a question of law for the court.

**9.    Insurance—Fire Insurance—Tearing Down Material Part of Insured Building and Removing Plumbing Increased Moral Hazard, Rendering Policy Void.**

Where insured took out a "valued" fire policy for $2,500 and subsequently tore down and sold a material part of insured building and some plumbing and heating material, he increased insurer's moral hazard by increasing his own temptation to burn the building, and thereby rendered policy void.

**10    New Trial—Appeal and Error—Granting New Trial Where Conceded Facts Showed Recovery Impossible Held Reversible Error.**

An order granting new trial for the exclusion of evidence which was properly excluded held reversible error, where, on the conceded facts, plaintiff could not recover.

Dillon, J., dissenting.

Appeal from Circuit Court, Minnehaha County; Hon. L. L. Fleeger, Judge.

Action by Holton Davenport, as trustee in bankruptcy of George W. Egan, against the Firemen's Insurance Company, of Newark, N. J. From an order granting a new trial, defendant appeals. Reversed.

*Cherry & Marker,* of Sioux Falls, for Appellant.

*Nathan H. Chase,* of Minneapolis, Minn., and *Boyce, Warren & Fairbanks,* of Sioux Falls, for Respondent.

(2)    To point two of the opinion, Respondent cited:    Ede v. Ward, 32 S. D. 351; State ex rel. Gruenig v Haley, 38 S. D. 568; Western Surety Co. v. Boettcher, (S. D.) 165 N. W. 381; Drew v. Lawrence, 37 S. D. 620; Blewitt v. Hendry, 37 S. D. 106.

(3)    To point three, Appellant cited:    Violette v. Queen Ins. Co. (Wash.) 165 Pac. 65; Gross v. Milwaukee Mechanics' Ins. Co., (Minn.) 87 N. W. 922; Still v. Conn. Fire Ins. Co., 185 Mo. App. 550, 172 S. W. 625; Pettit v. State Ins. Co., (Minn.)

43 N. W. 378; Home Mut. Ins. Co. v. Roe, 71 Wis. 33, 36 N. W. 594.

(4) To point four Appellant cited: Hronish v. Ins. Co., 33 S. D. 428, 146 N. W. 588; Langbehn v. Am. Ins. Co., 41 S. D. 581, 171 N. W. 820; Bourgeois v. N. W. Nat'l. Ins. Co., (Wis.) 57 N. W. 347; House v. Bankers' Reserve Life Co., 43 S. D. 440, 180 N. W. 69; Straker v. Phoenix Ins. Co., 77 N. W. 752; Northern Assur. Co. v. Grand View Building etc. 183 U. S. 389, 46 L. ed. 213; Modern Woodman v. Tevis, 117 Fed. 369; Penman v. St. Paul F. & M. Ins. Co., 216 U. S. 311, 54 L. ed. 493; Baumgartel v. Prov. Wash. Ins. Co., (N. Y.) 32 N. E. 901; Yusco v. Middle West Fire Ins. Co., (N. D.) 166 N. W. 539; Code 1919, Secs. 860, 9198, 9199; Cleaver v. Traders Ins. Co., 65 Mich. 527, 32 N. W. 660.

(5) and (6) To points five and six, Appellant cited: Anderson v. Interstate Business Men's Acc. Assn., 38 S. D. 105, 160 N. W. 522; Gray v. Germania Fire Ins. Co., (N. Y.) 49 N. E. 675; Moore v. Hanover Fire Ins. Co., 141 N. Y. 219, 36 N. E. 191; Cooley's Briefs, Vol. II, p. 1841; Eagle Fire Co. v. Globe Loan & Trust Co., 44 Neb. 380, 62 N. W. 895; McCarthy v. Mut. Ins. Co., 81 S. C. 152, 62 S. E. 1; Kimball v. Howard Fire Ins. Co., (Mass.) 8 Gray 33; Dewees v. Ins. Co., 35 N. J. L. 356; Wensel v. Property Mut. Ins. Co., 129 Ia. 295; Carlton v. Patrons' Androscoggin Mut. Ins. Co., 109 Me. 79, 82 Atl. 649; Havens v. Home Ins. Co., 111 Ind. 90, 12 N. E. 137; Sowers v. Mutual Fire Ins. Co., 113 Ia. 441, 85 N. W. 763; Rundell & Hough v. Anchor Fire Ins. Co. 101 N. W. 517; Worachek v. New Denmark Mut. Home Ins. Co., 102 Wis. 81, 78 N. W. 165; Athens Mutl. Ins. Co. v. Evans, 132 Ga. 703; Orient Ins. Co. v. Prather, 25 Tex. Civ. App. 446, 62 S. E. 89; Union Mutl. Life Ins. Co., v. Mowry, 96 U. S. 547, 24 L. ed. 674, Noem v. Equitable Life Ins. Co., 35 S. D. 593, 153 N. W. 652; Langbehn v. Ins. Co., 41 S. D. 581, 171 N. W. 820, House v. Bankers Reserve Life Co., 43 S. D. 441, 180 N. W. 69.

Respondent cited: Robins v .Springfield Fire & Marine Ins. Co., (N. Y.) 44 N. E. 159; Glover v. National Fire Ins. Co., 30 C. C. A. 95, 85 Fed. 125; Havens v. The Insurance Co., 111 Ind. 92, 12 N. E. 138, 60 Am. Rep. 689; Foster v. Scottish Union Ins. Co., 127 N. E. 65; Yusko v. Middlewest Fire Ins. Co.,

166 N. W. 539; Western Nat. Ins. Co. v. Marsh, 125 Pac. 1094, 42 L. R. A. (N. S.) 991; Twin City Fire Ins. Co. v. Stockmen's Nat. Bank, 261 Fed. 470; Schultz v. Des Moines Mutual Hail Ins. Co., (S. D.) 153 N. W. 884; Farmers State Bank of Parker v. Tri-State Mutual Grain Dealers Fire Ins. Co., 170 N. W. 638.

(8) To point eight, Appellant cited: Dustin v. Interstate Business Men's Accident Ass'n., 37 S. D. 625, 159 N. W. 395; Smith v. Security Mut. Fire Ins. Co., 37 S. D. 418, 158 N. W. 991; Syndicate Ins. Co. v. Gohn, 65 Fed. 165; McKernan v. North River Ins. Co., 206 Fed. 984, 26 C. J. 199; Pottsville Mut. Fire Ins. Co. v. Horan, 89 Pa. 438; Ampersand Hotel Co. v. Home Ins. Co., 115 N. Y. S. 480.

POLLEY, J. This action was brought to recover on a fire insurance policy issued to George W. Egan. At the close of the evidence the court directed a verdict for the defendant. Judgment was entered accordingly, and plaintiff moved for a new trial. This motion was granted, and from the order granting a new trial defendant appeals.

[1] The first question to be considered is, whether this court should review or disturb the order of the trial court granting a new trial. The general rule is that an order granting a new trial will not be disturbed by this court except where there has been an abuse of discretion by the trial court in granting the new trial. This rule is tersely stated by this court as follows:

"It is a well-established rule in this state that the order of a trial court granting a new trial will not be reversed unless it clearly appears that the trial court abused its discretion in granting such motion. In this case we are clearly of the view that the trial court did not abuse such discretion. It is conceded by appellant that there was a substantial conflict in the testimony upon the issue as to whether or not Mo was the agent of respondent in procuring the signatures to said indemnity bond; that the evidence in this particular was of such a nature that different conclusions might reasonably have been drawn therefrom. Under the unanimous view of the members of this court, as expressed in Drew v. Lawrence, 37 S. D. 620, 159 N. W. 274, when the trial court grants a new trial where there is a conflict in the testimony, the appellate court will not disturb such ruling on the

ground of abuse of discretion." Western Surety Co. v. Boettcher, 39 S. D. 541, 165 N. W. 381.

[2] In this case it is not a question of the conflict of evidence. The question involved is whether the trial court ruled correctly on the admission and exclusion of certain evidence at the trial. This presents purely a question of law and is not governed by the above rule, viz.: That the trial court is vested with judicial discretion which will not be overruled except for manifest abuse of such discretion:

"A motion for a new trial on the grounds of 'errors in law' is not addressed to the discretion of the court.". Hayne, New Trial and Appeal (Rev. Ed.) §100, and note 4.

[3] The building insured is described as a frame building 40x60 feet of the ground, but along one side of the building and extending beyond the end thereof was attached a lean-to or addition 30x80 feet that had been built for a dancing pavilion. There is some controversy in the record as to whether this addition was a part of the insured building and was covered by the insurance policy, or was only a temporary affair that did not constitute a part of the building, and was not covered by the insurance policy. The evidence showed that this pavilion was well built; that it was made of good material; was permanent in character; that it cost something more than $3,000; and was fastened to the main building as securely as possible. Under the evidence in the record, we have no hesitancy in holding that this pavilion constituted a part of the building; that it was covered by the insurance policy; and that, had such pavilion alone been damaged or destroyed by fire while the policy was in force, the appellant would have been liable for the loss under the terms of the policy.

[4-6] Shortly after the issuance of the policy, the insured caused this pavilion to be torn down. A part, at least, of the material was sold and a considerable sum of money realized therefrom by the insured. A part of the heating plant and plumbing material in the main building was removed and sold or used elsewhere by the insured. In the trial the insured offered to prove that before the policy was written the insurance agent stated that he could not insure the pavilion and that the company would not write insurance upon it; that as a consideration for

the issuance of the policy the insured should at once remove the pavilion and discontinue the dances and the restaurant on the premises; that this was assented to by the insured and that it was agreed that the insured should write a letter addressed to the insurer and leave it with the agent who was to sign the policy; and that such letter to the company together with the agent's re-port on issuing the policy, was then sent to the company. Such letter was not attached to the policy, nor was any memorandum thereof made on the policy. At the trial plaintiff made a written demand on defendant to produce this letter, to which demand defendant replied that it had no such document and never had received such document. Plaintiff then offered in evidence what purported to be a carbon copy of such letter. This was ex-cluded by the court, and if we understand the record, it was be-cause of the alleged error in excluding the evidence of this let-ter that a new trial was granted. We believe that this evidence was properly excluded and that the exclusion thereof did not constitute a ground for granting a new trial. The effect of such evidence would have been to change and materially vary the terms of the policy. Under the law and under the interpretation of the law by this court in the Hronish Case, 33 S. D. 428, 146 N. W. 588, approved in Smith v. Insurance Co., 37 S. D. 418, 158 N. W. 991, and again in Dustin v. Insurance Co., 37 S. D. 635, 159 N. W. 395, L. R. A. 1917B, 319, this evidence was not com-petent to show any agreement not contained in or indorsed upon the policy.

The standard policy adopted by the Legislature of this state goes into great detail as to what provisions it may contain. The law is very liberal in this respect and leaves the parties to a fire insurance policy great latitude, if indeed they are not without any restrictions whatever, as to the provisions that may be contained in the policy. On the other hand, the law requires that the en-tire agreement, whatever it may be, shall be contained in, or in-dorsed upon, the policy. In this respect the law is absolutely in-flexible. No officer or agent of an insurance company can bind the company, or estop it by any contract or agreement not in-cluded in or indorsed upon the policy itself. The effect of this provision of the law is to make the policy the only competent evidence of the contract between the insurer and the insured.

Had the evidence in question been received by the court, it would then have been in order for the party who issued the policy to have gone upon the stand and sworn that no such agreement was ever made. This would have imposed upon the jury the duty of determining the veracity of the respective parties. True, plaintiff had what he claimed to be a carbon copy of the alleged letter; but this in no manner strengthened his testimony. The existence of such letter still depended upon his uncorroborated word. To all intents and purposes it was purely a self-serving declaration. One of the principal reasons for requiring the entire contract to be embraced in the policy is to prevent just such situations as this in the courtroom.

It is contended by respondent that the question of the admissibility of this evidence was settled favorably to him in the case of State v. Egan, 44 S. D. 273, 183 N. W. 652. It is true we held this evidence should have been admitted in the criminal case, and reversed the judgment because of its exclusion; but it was admissible upon the question of criminal intent only, and the rule applied in that case has no applicability to a civil action. This is clearly pointed out in the opinion in that case where it is said:

"The question at issue was the criminality of defendant's act in making his report of loss and omitting to advise the insurance company that he had removed a material part of the property insured. For the purpose of this decision, we must assume that, if allowed so to do appellant could and would have proven to the satisfaction of the jury all of these facts concerning which he offered proof."

But in that case it was the truthfulness of the proof of loss that had been furnished by the insured that was at issue, and not the right to vary the terms of the policy by an extraneous agreement. With this evidence excluded, the decisive question in the case is: Did the removal of a portion of the insured building vitiate the policy?

[7] It is contended by appellant that by the removal of a portion of the building the insured increased both the moral and physical hazard of the insurer, and thereby rendered the policy void. The policy contains the following provision relative to the increase of the hazard after the issuance of the policy:

"This entire policy, unless otherwise provided by agreement hereon, or added hereto, shall be void  *  *  *  if the hazard be increased by any means within the control or knowledge of the insured."

We do not feel that we can hold as a matter of law that the acts complained of increased the physical hazard. This we believe presents a matter of fact for the jury upon the evidence. Whether the removal of the pavilion or the heating and plumbing material increased the physical hazard would depend to so great a degree upon the manner in which the work of removal was performed, that the question could be determined only by a jury or trial court upon the evidence.

[8, 9] On the other hand, what constitutes "moral hazard" is a question of law and may be determined by the court. Moral hazard is the risk, the danger, or probability that the insured will destroy or permit to be destroyed the insured property for the purpose of collecting the insurance, and any change in the condition of the insured or the insured property that will increase the probability that the insured will destroy the property for the purpose of collecting the insurance will increase the moral hazard. Any act or change in the conditions that will increase the temptation to destroy the insured property for the purpose of collecting the insurance will increase the moral hazard. So, too, will any act that reduces the value of the insured property in proportion to the amount of insurance or the procuring of insurance materially in excess of the reasonable cash value of the insured property. Quoting from Syndicate Ins. Co. v. Bohn, 65 Fed. 165, 12 C. C. A. 531, 27 L. R. A. 614:

" 'Moral hazard,' in insurance, is but another name for a peculiar interest in the insured to permit the property to burn. Statistics, experience, and observation all teach that the moral hazard is least when the pecuniary interest of the insured in the protection of the property against fire is greatest, and that the moral hazard is greatest when the insured may gain most by the burning of the property."

If the insured could take out a "valued" policy for $2,500 on this building, then tear down and sell a material part of the building, and then collect the full amount of the policy because of the burning of the remaining portion of the building, would

he not have a greater pecuniary interest in the destruction of what remained of the building than if no part of it had been removed? The question admits of but one answer, and when applied to the facts in this case, the answer is that the insured had a pecuniary interest in permitting the building to burn. Necessarily the moral hazard was increased, and from this it necessarily follows that the policy was vitiated by the removal of a portion of the building and that the plaintiff is not entitled to a recovery on the policy in any event.

[10] If the case were tried again, the court would be obliged, as a matter of law, to direct a verdict for the defendant because the policy is void. Where the conceded facts show, as they show in this case, that the plaintiff cannot recover, then there is nothing left upon which the trial court can exercise its judicial discretion. Only one conclusion is possible, and there is no question as to the sufficiency or insufficiency of the evidence. The court was right in directing the verdict for the defendant, and the order granting a new trial constituted reversible error.

DILLON, J. (dissenting). This case was tried to a jury and resulted in a directed verdict for the defendant. A new trial was granted, and the insurance company appealed to this court. The order granting the new trial, in my judgment, should be affirmed. Judge Whiting speaking for the court in State v. Egan, 44 S. D. 279, 183 N. W. 654, said:

"One of the particulars wherein it was claimed that the proof of loss presented by defendant was false was in realtion to the removal of a part of the property insured. The policy under which defendant claimed the right to be reimbursed for his loss through the destruction of the property insured, covered a certain two and a half story building situated upon certain described land. At the time that this policy was written, there was situated on this land a building answering the above description, which building was afterwards destroyed by fire. Attached to said building, at the time of the issuance of the policy, was an addition forming a material part of the entire structure, but so attached as to be capable of removal without injury to the main building. It appears undisputed that, very soon after this and numerous other policies were written covering the same property, defendant openly caused this addition to be torn down and that he removed

the lumber for use at other places.    In the report of loss upon which the information herein is based, he failed to make any report of the removal of such addition.    In charging the jury upon this phase of the case, the court so charged the jury as to virtually direct a verdict against the defendant.    We do not criticize such instruction, as we believe it was fully warranted under the undisputed evidence that had been received.    But appellant assigns error in the refusal of the trial court to receive certain evidence offered by him.    He sought to prove that this addition was considered an extra hazard; that, with such addition removed, the rate of insurance upon the main building would be $1.50 per hundred; while with the addition standing, it would be $1.75 per hundred; and that there was an understanding, at the time of the issuance of the particular policy to which this proof of loss referred, and also when the other policies were issued, that, as a consideration for a reduction of the insurance rate from $1.75 to $1.50, he was to, and he did agree to, remove such addition. After objections to various questions asked by him had been sustained, appellant offered to prove by certain named witnesses, they being the agents of the companies issuing the policies upon the property in question, that, in his applications for insurance— which applications were oral—appellant advised the agents that this addition was foreign to the use to which he desired and intended to put the main building; that he desired the insurance solely upon the main building; that it was agreed and understood with each of said agents that, as a condition for the giving to him of a reduced rate of insurance, he should write and give to each of said agents a receipt containing a covenant and agreement to remove the said addition; and that he did write such receipts and deliver the same to said agents.    This offer was refused.    We are of the opinion that, in its excluding such evidence, the court committed prejudicial error.    The question at issue was the criminality of defendant's act in making his report of loss and omitting to advise the insurance company that he had removed a material part of the property insured.    For the purpose of this decision, we must assume that, if allowed so to do, appellant could and would have proven to the satisfaction of the jury all of these facts concerning which he offered proof.    Certainly if, as a consideration for the insurance of the main building at a lower rate,

appellant had agreed to remove the addition so that it would not remain a menace to the property really insured, there existed no reason whatsoever why he should report to said company the fact that such addition had been removed. If the addition had not been removed and had burned, appellant, under the facts sought to be proven, could not have claimed that the policies covered such addition."

In conflict with Justice Whiting's opinion, this court now says:

"Under the evidence in the record, we have no hesitancy in holding that this pavilion constituted a part of the building; that it was covered by the insurance policy and that, had such pavilion alone been damaged or destroyed by fire, while the policy was in force, the appellant would have been liable for the loss under the terms of the policy."

It was said in the Whiting opinion that to refuse the offered testimony was a prejudicial error.

According to the decision of this court, which we should follow, the pending appeal ought to be affirmed. The agreement to insure the main building; the refusal to issue the policy until the dance hall and pavilion had been removed; that as soon as the dance hall and pavilion had been removed a cheaper rate of insurance might be allowed; that before the policy was issued a conversation was held between Mr. Whitehouse, the agent, and Mr. Egan as to what specific property would be covered by the insurance; that Mr. Whitehouse stated that he would not insure the pavilion or dance hall; that it was agreed that Mr. Egan should remove the dance hall and discontinue the restaurant; that he then could make application for a lower rate of insurance; that the modifications suggested should be reduced to writing, and that Mr. Egan should write a letter to the insurance company stating that the insurance should cover only the main building, and that he would remove the pavilion, and that upon such agreement such policy should be issued. The plaintiff further offered to show that Mr. Egan should reduce the agreement to writing and turn the letter over to Mr. Whitehouse, and that the letter should be sent to the company with the agent's report thereon. All of this testimony was excluded. Mr. Egan then moved for a new trial, which was granted. All of this evidence

was material to the issues and was before the court when the motion for new trial was granted. The contention that is now made that the motion for new trial presented purely questions of law is without merit. The whole record on the motion presented the sufficiency of the evidence to sustain appellant's contention. The rejection and admission of testimony; the right of the insured to remove the dance hall; whether or not the insured had made fraudulent proofs of loss in respect to his knowledge of the origin of the fire—these were before the court and involved in the motion for new trial, and the court after considering the same granted the new trial. Such ruling rested in the sound discretion of the trial court, and, under practically the unanimous decisions of this and other courts, such order should be affirmed on the grounds that it was a discretionary order.

In Hayne on New Trial and Appeal, vol. 2, 1587, it is said:

"The appellate court will never assume that the court below committed error in any respect. On the other hand, it will always assume that the court acted correctly and with legal warrant."

Again, at page 1622, this same author says:

"Upon this controverted fact there was testimony upon both sides before the court, and it is a sufficient answer to the appeal that the court has heard the evidence and rendered its decision thereon. Upon an appeal from that decision no inquiry can be made respecting the preponderance of the evidence. If there be any evidence in support of a finding, the action of the court must be affirmed. It is only when there is no evidence in the record in support of a finding that a decision of the trial court will be reversed upon the ground that it is unsupported by the evidence."

On pages 1639 of the same volume, it is said:

"Perhaps as good a statement of the rule as can be given (so far as motions for new trial are concerned) is that a motion for new trial, on the ground of the insufficiency of the evidence, is addressed to the discretion of the court below, and that the ruling thereupon will not be disturbed except for an abuse of discretion."

In State v. Egan, 195 N. W. 642, reported herein, I expressed my dissent and called attention to the numerous errors presented in that record. I am still convinced that the evidence was wholly insufficient to sustain the contention that the defend-

ant made a fraudulent proof of loss in respect to his knowledge of the origin of the fire and in support of his claim for fire loss. This evidence on the making of the alleged fraudulent proofs of loss, the valuation of the properties, the sufficiency of the evidence to sustain plaintiff's contention, were all before the court. The court having granted the new trial, these issues should now be passed upon by the court and jury on a de novo trial.

Note.—Reported in 199 N. W. 203. See, Headnote (1), American Key-Numbered Digest, Appeal and error, 977(3), 4 C. J. Sec. 2813; (2) Appeal and error, Key-No. 978(1), 4 C. J. Sec. 2814; (3) Insurance, Key-No. 163(2), 26 C. J. Sec. 85; (4) Evidence, Key-No. 441 (13), 22 C. J. Sec. 1672; (5) Insurance, Key-No. 133(1), 26 C. J. Sec. 35 (1925 Anno.); (6) Evidence, Key-No. 405(1), 22 C. J. Sec. 1471; (7) and (8) Insurance, Key-No. 668(9), 26 C. J. Sec. 775; (9) Insurance, Key-No. 318, 26 C. J. Sec. 244 (1925 Anno.); (10) New trial, Key-No. 41(2), 29 Cyc. 783.

As to whether indications that building may be intentionally set on fire is an increase of risk, see 31 L. R. A. (N. S.) 603.