FARMERS MUTUAL AUTOMOBILE INSURANCE COMPANY, Respondent

v.

BECHARD, Appellant

(122 N.W.2d 86)

(File No. 9980. Opinion filed June 10, 1963)

Rehearing denied August 13, 1963

**Martens, Goldsmith, May & Porter,** Pierre, for Defendant and Appellant.

**Agor, Bantz, Siegel & Barnett,** Aberdeen, for Plaintiff and Respondent.

BIEGELMEIER, J. It has been said facetiously of insurance policies "The front page giveth but the back page taketh away." The facts here involve their cant phraseology.

Plaintiff insurance company brought this action for a declaratory judgment to determine the rights of the parties under the Death and Disability provisions of an insurance policy issued to George Bechard in which defendant was beneficiary. The action was tried to the court which entered findings of fact, conclusions of law and judgment favorable to plaintiff, determining no liability existed on the policy for his death.

The facts are undisputed. Plaintiff insurance company on December 6, 1956, issued an Automobile Policy to Mr. Bechard which provided insurance against liability for bodily injury, property damage, etc., covering a Ford two-ton truck described therein as used commercially. The five-month premium of $49.60 included a charge of $1.60 for coverage defined as "Death and Disability—See Endorsement". By the endorsement the company agreed to pay a death benefit in the event of death of insured "caused by accident while in or upon or while entering into or alighting from, or through being struck by, an automobile * * *". On the back of the endorsement the following appears: "Exclusions. This insurance does not apply: (a) to bodily injury or death sustained in the course of his occupation by any person while engaged (1) in duties incident to the operation, loading or unloading of, or as an assistant on, a public or livery conveyance or commercial automobile * * *". "Definitions * * * With respect to this insurance the term 'commercial automobile' means a motor vehicle of the truck type * * *."

Max Horsley held a resident agent's certificate of authority issued by the Commissioner of Insurance pursuant to SDC 1960 Supp. 31.1302 to collect premiums, take applications for and countersign policies. In 1956 as a result of some negotiations hereafter mentioned Bechard procured a policy from defendant company. In May 1958 he arranged and paid for the extension of the insurance through this agent. The semi-annual premium on a successor Chevrolet truck had risen to $82.50; this included a "') & D" premium of $2. The agent sent the extension certificate, which he referred to as an endorsement by mail addressed to Mr. Bechard in care of a construction company that employed him. In the letter dated May 27, 1958, he wrote:

"* * * am glad to hear that you are back to hauling again.

"Am enclosing an endorsement to be attached to your truck policy showing the renewal premium paid and the coverages. On the letter enclosed from the company you will see why they charged us the extra amount. Now this was a new one to me although now I can see why they did this. You see on the D & D coverage, it covers you regardless of what you are driving so naturally you would want that coverage to be continuous. Also on the Comprehensive coverage it takes care of wind, hail, fire & theft along with its other coverages so it would be assumed that you would want this part to continue even if you weren't using the truck.

"Therefore their premium statement was correct and there will be a balance due of $19.35 as stated in the letter. * * *"

On June 9, 1958 in the course of his employment and occupation on a gravel-hauling project and while driving the truck described in the policy, George Bechard was involved in a collision with another gravel truck and received injuries that resulted in his death.

The insurance company claims the insurance does not apply because insured's death was sustained in the course of his occupation while engaged in duties incident to the operation of

a truck, it being a commercial automobile as defined in the endorsement and the exclusion clause quoted above. Defendant says the company is estopped or waived its right to assert such defense and has modified the terms and coverage of the policy by the acts of its resident agent. Mindful of the difficulty of stating general rules we approach the question presented by referring to authorities which have done so.

In Carew, etc. v. General Casualty Co., 189 Wash. 329, 65 P.2d 689, in denying reformation, however, for lack of proof, it was said:

"The general rule is that, while an insurer may be estopped, by its conduct or its knowledge or by statute, from insisting upon a forfeiture of a policy, yet, under no conditions, can the coverage or restrictions on the coverage be extended by the doctrine of waiver or estoppel."

The court in Travelers Ins. Co. v. Eviston, 110 Ind.App. 143, 37 N.E.2d 310, in allowing recovery for death of a 72-year-old insured where the policy provided "This insurance does not cover any person under 18 or over 70 years of age", stated:

"It is true that the doctrine of implied waiver or of estoppel is not available to bring within the coverage of an insurance policy, risks that are not covered by its terms, or that are expressly excluded therefrom. * * * But in general the doctrines * * * extend to practically every ground upon which an insurer may deny liability."*

The court said in the law of insurance the distinction between estoppel and implied waiver is not easy to preserve and quite commonly the courts have found it unnecessary or inadvisable to make a distinction between them and have used the terms inter-

---

* Appleman on Insurance, § 9090, notes 35 and 40, comments on these two opinions by saying the Washington court's "flat assertion sounds extremely logical, but is unequivocally wrong, if it entertained no mental reservations. There are many situations, and numerous decisions * * * which actually extend the coverage of the policy"; as to the quotation from the Indiana court he adds this statement again is too broad. See also Sowers v. Iowa Ins. Co., Wyo., 359 P.2d 488; Reserve Life Ins. Co. v. Ramsey, 98 Ga.App. 732, 106 S.E.2d 820; 113 A.L.R. 857.

changeably. Quoting from an opinion from the Indiana Supreme Court, it said:

"There is nothing mysterious or peculiarly venerable about the ordinary insurance policy, with its long list of provisions and conditions of defeasance. All these and singular must be construed, like similar provisions in other written instruments, upon sound and well-established principles—principles that support the integrity of the contract, and that forbid an insurer from taking the money of another for a policy, which he knows at the time of delivery contains a provision which, under the facts, will enable him to avoid it, if a loss occurs."

The court concluded an agent having authority to issue and collect for policies may effect a waiver despite the existence of a non-waiver clause in the policy and the usual clause limiting changes to an executive officer of the company. It appears the coverage would have been void in its inception if the age limit were given effect, the situation present and discussed in the Cassels and Hight opinions, infra.

An insurance company was held to have waived an exclusion clause in Golden Gate Motor Transfer Co. v. Great Am. Indemnity Co., 6 Cal.2d 439, 58 P.2d 374, and estopped to enforce a clause contrary to the policy ordered in Ames v. Employers Casualty Co., 16 Cal.App.2d 255, 60 P.2d 347. Both opinions cited and quoted from Raulet v. Northwestern Nat. Ins. Co. of Milwaukee, 157 Cal. 213, 107 P. 292, 298, where the court wrote:

"It must be presumed, ordinarily, that persons are familiar with the terms of written contracts to which they are parties, and in the absence of fraud they are justly bound by the provisions therein, but the rule should not be strictly applied to insurance policies. It is a matter almost of common knowledge that a very small percentage of policyholders are actually cognizant of the provisions of their policies and many of them are ignorant of the names of the companies issuing the said policies. The policies are prepared by the experts of the companies, they are highly technical in their phraseology,

they are complicated and voluminous—the one before us covering thirteen pages of the transcript—and in their numerous conditions and stipulations furnishing what sometimes may be veritable traps for the unwary. The insured usually confides implicitly in the agent securing the insurance, and it is only just and equitable that the company should be required to call specifically to the attention of the policyholder such provisions as the one before us. The courts, while zealous to uphold legal contracts, should not sacrifice the spirit to the letter nor should they be slow to aid the confiding and innocent. * * *"

The quotation from the Raulet opinion finds a familiar ring in the expressions of this court in Craig v. Nat. Farmers Union Auto. Ins. Co., 76 S.D. 349, 78 N.W.2d 464. There it was said failure to read the policy will not bar recovering as they "are rarely examined by the insured and even where examined are not always enlightening to him, due to the technical and complicated language in which the contract is usually couched. Another practical factor considered * * * is that the applicant usually tells the insurer's agent of his coverage necessities and relies on the agent for a policy in accordance therewith."

Ivey v. United Nat. Indemnity Co., 1958, 9 Cir., 259 F.2d 205, is of similar import, the court holding the representations of the insurance company made by its agent that the insurance plaintiff was procuring covered the liability he requested, would if proved, estop the company from denying the coverage. There the insurance broker occupied a dual capacity; he was the insured's agent to procure the insurance and as such negotiated with the insurance company's branch office for the policy. He procured the policy and as agent for the insurance company delivered it to Dr. Ivey, the insured. The court said under the law of California "an insurance company may by its conduct or dealings apart from the policy itself be estopped from denying that coverage has been furnished for a risk which the insured has been led to believe is protected under the policy."

Whatever conclusion may be reached from reading the various decisions of this court involving fire insurance policies on

forms made compulsory by statute (Davenport v. Firemen's Ins. Co., 47 S.D. 426, 199 N.W. 203, and the Hronish, Smith and Dustin cases cited therein, [Hronish V. Home Ins. Co., 33 S.D. 428, 146 N.W. 588, Smith v. Security Mutual Fire Ins. Co., 37 S.D. 418, 158 N.W. 991, Dustin v. Interstate Business Men's Accident Ass'n., 37 S.D. 625, 159 N.W. 395]; Amos v. Ins. Co., 64 S.D. 434, 267 N.W. 336; Bisson v. Farmers Ins. Co., 64 S.D. 525, 268 N.W. 698; Prose v. Hawkeye Securities Fire Ins. Co., 51 S.D. 3, 211 N.W. 970; Cassels v. South Dakota Threshermen's Mut. Ins. Co., 51 S.D. 36, 211 N.W. 805; Hight v. Maryland Ins. Co., 69 S.D. 320; 10 N.W.2d 285, some of these opinions involve knowledge, waiver or estoppel) in Bruins v. Anderson, 73 S.D. 620, 47 N.W.2d. 493, it was said general rules of waiver and estoppel apply to the acts that will preclude an insurer from raising objections as to the manner of furnishing proof of loss and giving similar notices.

However stated, estoppel or waiver do affect and change the rights of the parties under the literal terms of an agreement, whether it be an insurance policy or other written instrument. Varying applications are given in 45 C.J.S. Insurance § 704, p. 674; many of these are directed toward the companies' right to avoid the policy or what courts sometimes refer to as forfeiture. Insurance companies depend substantially on payment of premiums for their existence, yet to continue a policy in force the court in Sjoberg v. State Auto Ins. Ass'n, 78 N.D. 179, 48 N.W.2d 452, held the right to insist on payment in cash was waived by an attempt to collect on "insufficient funds" check given for the premium. The court indicates this is a waiver of a provision for forfeiture; its effect is to continue the policy beyond the expiration date. Estoppel to enforce an exclusion of an age limitation, Travelers Ins. Co. v. Eviston. supra, or a clause that determines the insurance void if encumbered, Cassels v. South Dakota Threshermen's Mut. Ins. Co., supra, or not owned in fee simple, Hight v. Maryland Ins. Co., supra, result in recovery on the policy—in other words coverage declared where coverage was excluded. Cf. Klingler v. Milwaukee Mechanics' Ins. Co., 193 Wis. 72, 213 N.W. 669 and the late case of Briney v. Tri-State Mutual Ins. Co., Iowa, 117 N.W.2d 889, where a "null and void" clause was held waived by adjuster's knowledge. That is the effect of all cases where waiver or estoppel are permitted; i. e., liability where no

liability existed by virtue of the printed contract. If estoppel and waiver may prevail for the purposes indicated by these and other authorities that may be cited, there is no reason they may not properly serve in other areas.

Recognition of the doctrines of waiver and estoppel and their application to insurance policies are not of recent origin. In American Central Ins. Co. v. McLanathan, 11 Kan. 533, (1873) at the time the insurance policy was applied for, plaintiff informed the agent that the lots on which the house was situated were deeded to his wife, though plaintiff had built it; the agent stated it would make no difference; the policy provided "if the interest of the assured is not one of absolute ownership * * * then this policy shall be void." After the house was destroyed by fire plaintiff brought suit on the policy. The defense was plaintiff did not own the property and had no insurable interest in it. Judge David J. Brewer, who later became a Justice of the United States Supreme Court, writing for the court, said:

> "Was the act of the agent a waiver of the stipulation (of absolute ownership) in the policy, and could the agent bind the company by such waiver? * * * All the assured knows about the company, is generally through the agent. * * * Practically the agent is the principal in the making of the contract. * * * (quoting from another opinion) 'The policy is accepted, and the premium paid, on the faith of this assurance. The party insured goes away relying upon its validity to protect him against loss during the time specified. He acts upon a state of things represented to him by the agent to be sufficient, and it would work a fraud upon him if the company should now be allowed to avail itself of this defense.' "

So far as we have been able to discern the opinion has not been overruled but has been cited in the Phenix Ins. Co. v. Munger, 49 Kan. 178, 193, 30 P. 120, 122, and Lattner v. Federal Union Ins. Co., (1945) 160 Kan. 472, 163 P.2d 389; Stewart v. Commonwealth Cas. Co., 137 Kan. 919, 22 P.2d 435 follows the same reasoning. Both waiver and estoppel are used in the opinions all of which are referred to in the comment in 11 Kan.L.R. 537 (1963). This court

has extended the doctrine of estoppel beyond a breach of the policy which causes a forfeiture to that which precludes an in-surance company from setting up the defense of non-coverage by reason of an exception in the policy from the risk insured against. Ziegler v. Ryan, 66 S.D. 491, 285 N.W. 875.

■ We conclude an insurance company which in its policy has written the generally broad coverage may be estopped to defend by reason of an exclusionary clause not within the terms the insured ordered and coverage which he was led to believe was contained therein. Craig v. Nat. Casualty Co., 76 S.D. 349, 356, 78 N.W.2d 464, 468; Flanagan v. Sunshine Mut. Ins. Co., 73 S.D. 256, 260, 41 N.W.2d 761, 763.

■ ■ The evidence to support the granting of relief, how-ever, should be clear and convincing. Employers' Liability Co. v. Madric, (1962) Del., 183 A.2d 182, reversing Del.Super., 174 A.2d 809; cf. Craig v. Nat. Cas. Co., supra, and Conard v. Auto-Own-ers Ins. Co., Iowa, 117 N.W.2d 53, where rule recognized. De-fendant's evidence was undisputed and the trial court, both in his opinion and findings, appears to have accepted it as truthful, but in his opinion, states "the defense of Waiver and Estoppel is not valid in this case" and in the findings the conversations and letter were "insufficient to establish a waiver (or) * * * estoppel", preceding these statements with a finding the repre-sentations of the agent did not indicate a fraudulent intent or anything to deceive the insured. Deceit or fraudulent intent are not necessary.

Exhibit 2, a circular issued by the insurance company con-taining an application for the D & D benefits, was left with the insured and discussed at the time the insurance was written. It advised insured (emphasis supplied): "Death and disability benefits can now be added to your present auto policy at very low cost! * * * Read inside for **complete** information. If your present policy provides Medical Payments Coverage then you are eligible for Death and Disability Protection. (giving illus-trations of medical payments) To each person injured while riding in, entering, or alighting from your car. To you and members of your family (residing in same household)—injured while riding in practically ANY car, or when struck by a car. * * * NOW!

In addition * * * cash payments can be obtained for Death and Disabling Injuries resulting from accidents received while riding in **any** car or when struck by a car * * * If your present policy does NOT provide Medical Payments Coverage, call your Farmers Mutual Agent." Thereafter appeared other information and an Application blank which the agent filled out requesting addition of medical payments and D & D benefits to his then numbered policy. The circular concluded "D & D Benefits also available with $10,000 Maximum Benefits. For **Complete Information, see your Farmers Mutual Agent."**

Insured and his wife were interested in accident coverage and the agent explained it in the event an accident occurred to insured George Bechard while driving his gravel truck, "He (Horsley) said he (George) was covered regardless of what he was driving, what kind of work he was doing." It will be noted the letter of May 27 forwarding a paper called "Endorsement to be attached to your truck policy showing renewal premium paid and the coverages" he said with reference to the increased amount "You see on the D & D coverage it covers you regardless of what you are driving so naturally you would want that coverage to be continuous". The endorsement—its title "Amended Declarations"—bears a printed rubber stamp of the Horsley In· surance Agency with its address; the letter contains the signature of the resident agent.

█ It will be seen the circular says D & D benefits may be added to "your present auto policy"; cash payments resulting from accidents received "while riding in any car or when struck by a car." The word car is defined in Webster's Dictionary, 2d Ed., then extant, as a vehicle moved on wheels, in general, a carriage, cart, wagon or truck. Insured's then "auto" policy covered a truck. There is no intimation of any exclusion for D & D benefits while riding in a truck. The only exclusion is with reference to the Medical Payment Coverage where it mentions coverage while riding in "practically any car". The D & D coverage is stated as "while riding in **any** car." (Emphasis supplied) The circulars were admissible not only to show the insured advertised they wrote the policies without restriction as to trucks but they also held their agents out as persons to be consulted with reference to them.

Frank v. Pacific Mut. Life Ins. Co., 44 Neb. 320, 62 N.W. 454; also M.F.A. Mutual Ins. Co. v. Jackson, (1959) 8 Cir., 271 F.2d 180. Counsel for both parties cited and quoted from the district court opinions in the latter case which was affirmed in an opinion by the late Judge A. K. Gardner. The agent in the Jackson case was only a soliciting agent; in a receipt the company mentioned a free service of personal analysis to its policyholders stating "* * * ask your M F A Mutual Agent. He is an authorized insurance consultant and is qualified to advise you on your insurance needs. See him today." Under Arkansas law a soliciting agent was without authority to change or modify terms of an existing contract or bind the company by agreeing to do so. The court held the company's statement which was received by insured some days after the agent's conversation, gave apparent authority to the agent to advise and determine a change in occupancy did not increase the hazard or risk (though it did so under the policy) and the company was estopped to rely on the clause to the effect the company "shall not be liable for loss occurring * * * while the hazard has increased * * *." This opinion illustrates the effects of both estoppel and the apparent authority of an agent.

■■ The law is settled in this jurisdiction that a soliciting agent is deemed the general agent of the company, and as such, his knowledge becomes the knowledge of, and binding on, the company. Thomas v. Modern Brotherhood, 25 S.D. 632, 127 N.W. 572, citing among other cases, Fosmark v. Equitable Fire Ins. Co., 23 S.D. 102, 120 N.W. 777. Fosmark is also cited in Bruins v. Anderson, supra. After stating this principle and citing these cases, this court said the rule should not be without limitation and contemplates the existence of entire good faith on the part of the insured (there is no suggestion of fraud here) and absence of circumstances that would impute knowledge that the insurer would be deceived by the application. Williams v. Black Hills Benefit Life Assn., 70 S.D. 611, 19 N.W.2d 769. An insurance company may be estopped from interposing a defense based upon an untrue answer in a policy application, which the insured called to the attention of the soliciting agent, and was advised it made no difference. Thomas v. Modern Brotherhood, supra. Having asked and been assured orally and in writing that generally he had

coverage (as indeed he had by the clause entitled "Coverage" on the front page) and as the circular proposed and the fact that the motor vehicle to which the D & D benefit was added was the gravel-hauling truck which the agent knew was being used by the insured in his occupation, it seems clear and convincing evidence that the insured and the resident agent believed the insured was covered for the loss which later resulted and this mutual belief was the result of the insured's request for such coverage. The D & D coverage of Bechard while driving the very truck described in the policy and used in his occupation would be of no value and to enforce the exclusion provided on the back thereof would enable the insurer to avoid it if loss occurred, except in the event he was riding in or driving q car other than the truck or the truck outside his occupation, an unlikely occasion as it was hardly a nonoccupational or pleasure vehicle. In the absence of fraud courts have refused to enforce such exclusions. See Ohio Farmers Inc. Co. v. Vogel, 166 Ind. 239, 76 N.E. 977, 3 L.R.A., N.S., 966, 117 Am.St.Rep. 382, 9 Ann. Cas. 91, cited in Travelers Ins. Co. v. Eviston, supra, and quoted above. Anderson v. Aetna Life Ins. Co., 303 Ky. 322, 197 S.W. 2d 781 and Union Life Ins. Co. v. Burk, 10 Cir., 169 F.2d 235, reach a different result indicating the agent had no authority to interpret or construe the contract.

█ Horsley was the agent for the company and as its resident agent was asked to procure the policy indicated. It is assumed the agent kept his company informed of his actions and if error resulted, it was by the fault of the insurance company or its agent and it should bear the loss. Cf. Thomas v. Employers' Liability Assur. Corp., 288 Pa. 325, 135 A. 614; Klingler v. Milwaukee Mechanics Ins. Co., supra; Smith v. New York Life Ins. Co., D.C., 208 F.Supp. 240; Reishus v. Imp. Dealers Mutual Ins. Co., N.D., 118 N.W.2d 673, 681; Stewart v. Commonwealth Cas. Co., 137 Kan. 919, 22 P.2d 435 and Rubinson v. North American Ins. Co., 124 Neb. 269, 246 N.W. 349. The extent which insurance companies may attempt to limit their agents appears in Peterson v. Great American Ins. Co., 74 S.D. 334, 52 N.W.2d 479; the limitation was not permitted to prevail for reasons there stated. See also the Phenix Ins. Co. v. Munger, 49 Kan. 178, 195, 30 P. 120, 123 and Stewart v. Commonwealth Cas. Co., supra. The growth of insurance is some proof of its economic and social necessity at this

time and insurance companies are required to act fairly when dealing with an insured and their exclusions and exemptions on the back page may not be used under the facts here present to destroy the coverage on the front page. Compare Gray v. Gurney Seed & Nursery Co., 62 S.D. 97, 252 N.W. 3.

■ Finally, reformation may be an available remedy but not a necessary one. Ames v. Employers Cas. Co., 16 Cal.App.2d 255, 60 P.2d 347.

Reversed.

HANSON, P. J., and HOMEYER, J., concur.

ROBERTS, J., dissents.

RENTTO, J., concurs in dissent.

ROBERTS, J. (dissenting) The facts underlying the controversy between the parties to this action are without material dispute. Plaintiff issued a liability policy to George and Darleen Bechard which included coverage against loss or damage from liability for bodily injury and property damage in connection with the operation of a Chevrolet truck. Attached to the policy is a rider or endorsement by the terms of which insurer agreed to pay accidental death and disability benefits. The endorsement contains the following exclusion clause: "This insurance does not apply: (a) to bodily injury or death sustained in the course of his occupation by any person while engaged (1) in duties incident to the operation, loading or unloading of, or as an assistant on, a public or livery conveyance or commercial automobile, or (2) in duties incident to the repair or servicing of automobiles;". The endorsement defines the term "commercial automobile" to mean "a motor vehicle of the truck type".

The insured, George Bechard, was killed while driving and operating in the course of his occupation the Chevrolet truck described in the policy. It is undisputed that insurer under the terms of the policy was excepted from liability for an accidental death of the character here involved. Defendant contends, however, that plaintiff insurer because of certain representations made by its agent is estopped from denying liability and asserting a de-

fense under the quoted exclusion clause and is obligated to pay to her as the surviving wife the amount of the death benefit specified in the endorsement.

The general rule is that the doctrine of waiver or estoppel is not available to extend the coverage of an insurance policy or bring within its coverage a risk expressly excluded. The author of an annotation in 113 A.L.R. 857, citing numerous cases, concludes:

"It is well settled that conditions going to the coverage or scope of the policy, as distinguished from those furnishing a ground for forfeiture, may not be waived by implication from conduct or action, without an express agreement to that effect supported by a new consideration. This rule may be, as it often is, otherwise stated that the doctrine of waiver may not be applied to bring within the coverage of the policy risks not covered by its terms, or risks expressly excluded therefrom. (It will be noted, as above indicated, that the courts have also generally held, where the question has been considered, as appears from the statement of the individual cases, that the doctrine of estoppel could not be relied on to extend the coverage of the policy.)"

See also 45 C.J.S. Insurance § 674; 29A Am.Jur., Insurance, §§ 1014, 1135; 16 Appleman, Insurance Law and Practice, § 9090.

The court in Miller v. American Eagle Fire Ins. Co., 253 N.Y. 64, 170 N.E. 495, considering application of the rule, observed:

"The insurance company may be strictly held to its policy; its contract may even be liberally construed in favor of the policyholder, but the losses which it has specifically excluded cannot be brought within the insurance by a ruling of the courts. The contract which the parties have made limits the power of the courts. The law can declare a liability based upon the contract, but it has no power to make a contract."

The policy provision with which we are here concerned excluding specified risks from coverage is not a condition the breach

of which would work a forfeiture, but is an exception and hence the doctrine of waiver which relieves against forfeiture has no application. An estoppel arises whereby conduct or acts a party has been induced to alter his position or to do that which he would not otherwise have done to his prejudice. Ziegler v. Ryan, 66 S.D. 491, 285 N.W. 875 and cases cited. The question of law is whether the evidence makes out a case of estoppel.

The trial court in an exhaustive memorandum states its reasons for the declaratory relief granted the plaintiff. The following excerpts are particularly pertinent:

"The court is of the opinion that any conversations that took place after the death of George Bechard between Max Horsley and defendant and Max Horsley and Morris Bechard and Alfred Bechard were immaterial to any of the issues in this case as they could not possibly add to, diminish, or alter the facts and circumstances surrounding the writing of the automobile policy here in litigation. * * *

"In the case before this court for decision there is no evidence of fraud, deceit, or errors of any kind on behalf of the plaintiff insurance company. There is no evidence that the insurance contract was not written by the company exactly as ordered by the Agent Horsley. The death and disability endorsement appears to be a standard printed coverage endorsement used by the company to furnish a limited death and disability coverage to the public for a small premium. Its terms are not vague or complicated and its 'Exclusion' provisions are clear and explicit. Such coverage was only a minor portion of the coverages in the automobile policy constituting the entire insurance contract between the parties."

Defendant relies on decisions to the effect that an insurer is estopped from taking advantage of an exclusion clause where insured relies on an agent to supply specific coverage and which the insurer fails to provide and which the agent mistakenly represents was contained in the policy. In Ivey v. United National Indemnity Company, 9 Cir., 259 F.2d 205, which is relied upon to a

great extent by defendant, insured relied on his insurance agent to obtain an extension of the coverage of an automobile liability policy to include liability for property damage in connection with his business and representations were made by the agent that renewal of the policy would cover such business. The court holding that the insurance company must be held bound under the circumstances to give the protection contracted for said: "Now, if Knudsen, as broker, was the agent and representative of the insured, representations made to him would have the same effect as if made to Dr. Ivey. At any rate he passed to Dr. Ivey the information received from the company that he had the coverage. We know of no reason why Knudsen could not be the broker for Ivey in procuring the required coverage and also the agent for the insurance company in delivering the policy to appellant after its execution." The Ivey case is clearly distinguishable from the present case in that the policy of insurance contracted for was different from that actually written.

The responsibility of plaintiff insurer was limited to the representations and agreements of its agent Horsley which were made within the limits of his authority. Actual authority being absent, defendant relies upon apparent authority of the agent. If the statements volunteered by the agent of plaintiff company in the letter of May 27, 1958, transmitting the endorsement come within the category of a construction of the contents of the policy, it does not appear that the policy is ambiguous or susceptible of two constructions or that defendant and her husband relying on such construction were induced to alter their position or to do that which they would not otherwise have done to their prejudice. In so far as it appears from the record, it was no part of the agent's duty to construe or interpret the terms of the policy. "To create an estoppel the representation relied on must be a statement of a material fact, and not a mere expression of opinion." 31 C.J.S. Estoppel § 79, p. 288. The same rules apply to insurance companies as are applied generally in agency. Insured was in possession of the policy and had the opportunity to read it. The means of deriving information upon which to form a judgment was open to him and there is no claim of fraudulent or deceitful conduct on the part of agent Horsley. The circular which was received in evidence did not purport to give com-

plete details of death and disability coverage. By this means, policyholders were invited to consult agents of plaintiff insurance company as to additional coverage avaliable to policyholders. It is unreasonable to give to the circular the efficacy claimed by defendant. It was never intended to be relied upon as stating the terms of death and disability coverage and to become a part of the contract of insurance.

The facts herein are not comparable to those appearing in Ziegler v. Ryan, supra. The insurer in that case assumed and conducted the defense of an action against the insured with knowledge of facts taking the accident outside the coverage of the policy and without disclaiming liability or giving notice of a reservation of the right to deny liability. The controlling factors in that case were the inconsistent positions taken by insurer and prejudice of insured's rights by its conduct. The insured was led to believe and understand that defense of noncoverage would not be asserted and to his prejudice insured relinquished all control of the defense of the action against him. The essential elements of estoppel therein established are not present in the instant case.

Defendant is claiming in this action a benefit for which her husband did not contract and the evidence in my opinion falls far short of proving an estoppel precluding plaintiff insurer from setting up the defense of noncoverage. It is my conclusion that the action of the trial court in entering declaratory judgment for the plaintiff was correct. I would affirm the judgment.

RENTTO, J., concurs.