## NATIONAL LIBERTY INS. CO. v. HERRING NAT. BANK OF VERNON, TEX.

### No. 5083.

Court of Civil Appeals of Texas. Amarillo.

Nov. 27, 1939.

Rehearing Denied Jan. 2, 1940.

Thompson, Knight, Baker, Harris & Wright and William H. Neary, all of Dallas, and J. A. Storey, of Vernon, for appellant.

Berry, Warlick & Bunnenberg, of Vernon, for appellee.

FOLLEY, Justice.

This is a suit on a hail insurance policy issued by the appellant, National Liberty Insurance Company of America, upon the one-third interest of the appellee, the Herring National Bank of Vernon, Texas, in a wheat crop of 635 acres located in Wilbarger County, Texas. For a premium of $222.25 the one-third interest in the 635 acres was insured for $5 per acre, the total face amount of the policy being in the sum of $3,175. The petition of the appellee sought recovery for two separate losses by hail. The first loss was alleged to have occurred on May 27, 1938, and the second on June 3, 1938. The appellee alleged that the first hail storm resulted in a 70.5% loss of the entire crop insured, that the second hail caused an additional loss of 15.6% of the entire crop insured

and that the aggregated percentage of loss amounted to the sum of $2,733.17.

The appellant answered that the actual value of the crop was substantially less than the recovery sought by the appellee; that material damage was suffered by the crop by reason of causes other than hail; that a portion of the damage was the result of worms, rust, freeze, wind and delay in harvesting the crop, which losses were not covered by the policy and for which the appellee was seeking recovery; and that the appellee could not recover for the alleged loss of June 3, 1938 on account of the failure of the appellee to give the required notice to the appellant as provided in the policy.

The cause was submitted to the jury and their verdict was substantially as follows: that the wheat crop of the appellee located on Section 25, Block 14, H. & T. C. Ry. Co. Survey, Wilbarger County, Texas, was damaged by hail on May 27, 1938; that the percentage of loss or damage to said wheat crop described in Special Issue No. 1 as a direct result of the hail of May 27, 1938 was 60%; that the wheat crop described in Special Issue No. 1 was damaged by hail on June 3, 1938; and that the percentage of loss or damage occasioned to appellee's wheat crop, described in Special Issue No. 1, as the direct result of the hail of June 3, 1938, was 10%. Upon this verdict the court rendered judgment for the appellee in the sum of $2,222.50, which was 70% of the face amount of the policy.

The appellant seeks reversal of the judgment of the court below upon three general propositions: first, that the hail insurance policy was not what is usually denominated a "valued policy" and therefore the assured's recovery was limited to the actual pecuniary loss sustained; secondly, that by reason of the policy not being a "valued policy" the court erred in refusing to submit to the jury the various defenses pleaded by the appellant with reference to damage from worms, rust, freeze, wind and delay in harvesting; and, thirdly, in the absence of the required written notice of loss following the second hail, and because of the first hail on May 27, 1938, no recovery should have been permitted for any damage alleged to have occurred by reason of the storm of June 3, 1938.

The policy in issue contains the following stipulations which we deem material to this controversy:

"17. In case the exact acreage of any crop insured hereunder is less than the total acreage stated in the Insured's application, the total amount of insurance applying to such crop shall be reduced in that proportion that the ascertained deficiency in acreage bears to the total acreage stated in said application and the Company shall return the premium on such excess.

"18. In case the exact acreage of any crop insured hereunder is greater than the total acreage stated in the Insured's application, the amount of insurance per acre shall be determined by dividing the total amount of insurance applying to such crop by the total number of acres comprising said crop.

"19. In case of disagreement as to the correct acreage of any crop covered hereunder the Insured shall furnish, without cost to this Company, a survey made by a competent surveyor showing the exact acreage of such crop, and failure of the Insured to furnish such survey on demand shall render this policy null and void.

"20. The liability of this Company for loss or damage to any crop herein described, or any part thereof, shall be reduced in the same proportion as the proportion in which said crop, or any part thereof, is reduced by cutting, digging, picking, pulling or otherwise harvesting.

\*       \*       \*       \*       \*       \*

"22. In the event that any crop herein described is damaged or destroyed by hail, the amount payable hereunder shall in no event exceed the same percentage of the amount of insurance applying to the particular crop so damaged or destroyed at the date of loss, as the ascertained percentage of loss or damage by hail only bears to the whole of the particular crop or crops so damaged or destroyed at the date of the loss; nor in any event exceed the actual loss or damage sustained by hail only, nor exceed the amount of insurance applying to the particular crop so damaged or destroyed."

These provisions of the policy are in the exact language of the policy in issue in this court in the case of Insurance Company of North America v. Mathers, Tex. Civ.App., 31 S.W.2d 1095, writ dismissed. In that case, in connection with the provision that the ratio of payment under the policy should in no event exceed the same percentage of the amount of insurance applying to the crop damaged as the ascertain-

ed percentage of loss by hail bears to the whole crop, this court held that the trial court "did not commit error in permitting appellee to recover without alleging and proving the value of the wheat damaged and destroyed by the hail". Such holding was in conformity to the former decisions of this court upon this issue. Fidelity Union Fire Insurance Company v. Mitchell, Tex.Civ.App., 249 S.W. 536; St. Paul Fire & Marine Ins. Co. v. Pipkin, Tex.Civ.App., 207 S.W. 360; Fidelity Union Fire Ins. Co. v. Hicks, Tex.Civ.App., 250 S.W. 1084.

The appellant asserts that the policy in the instant case is distinguishable from that of the Mathers case, supra, and in support of its contention in this respect cites us to paragraph 13 of the insurance contract in the instant case. Such paragraph is as follows: "On all crops other than vine, truck, vegetable, tobacco, long staple irrigated cotton and fruit crops, total insurance for all interests on the crops described herein shall not be permitted to exceed Thirty-six ($36.00) Dollars per acre on irrigated land and Twenty-four ($24.00) Dollars per acre on non-irrigated land, nor to exceed Two Hundred ($200.00) Dollars per acre on vine, truck, and vegetable crops, and Seventy-two ($72.00) Dollars per acre on long staple irrigated cotton. However, in the event that the total insurance per acre exceeds this limit or exceeds the value of the crop, this company shall be liable only for its pro rata part of the value of the crop if the value be less than such stated limits, and in no event to exceed its pro rata part of such limit per acre, it being understood and agreed that the liability of this company shall in no event be held to exceed the actual proportionate interest of the Insured in the crops described herein. If the total insurance on this crop exceeds the maximum limits permitted hereunder, the company shall refund its proper pro rata share of premium on such excess."

The appellant contends that the corresponding paragraph in the Mathers case was apparently different in that it did not contain the clause above quoted to the effect that the company's liability should be limited to a pro rata of the "value of the crop". We have obtained the statement of facts in the Mathers case, which is on file in this court, and upon careful examination find that such paragraph is in the exact language of the policy in the case before us. In fact, upon comparison of the two policies as a whole we find no material distinction between them. The same numbers are used in the respective policies for each paragraph dealing with the same subject matter and the language used in the corresponding paragraphs of both policies is identical with the exception of a few minor variations which are trivial.

It appears to us that the provision last quoted above was inserted in the policy apparently for the purpose of preventing the issuance of a policy far in excess of the value of the crop insured and for that reason a limit of $24 per acre was placed on wheat upon non-irrigated land and $36 per acre upon irrigated land. We think the paragraph as a whole simply provides that in the event of such excess coverage the company should not be liable upon the policy on the basis of its face amount but that such face amount should be reduced in proportion to the value of the crop insured, the appellant's liability being determinable from such reduced figure, and the premium adjusted ratably. This provision, we think, in the absence of any showing of excess coverage, does not in any manner lessen or limit the liability of the appellant as expressed in the paragraphs first quoted above. The only reasonable construction of such paragraphs would be that the appellant assumed liability for whatever per cent of the face amount of the policy the loss or damage bears to the whole of the particular crop insured. In other words, these provisions would warrant the construction that if the whole crop was damaged 70%, as found by the jury upon sufficient evidence in this case, the appellant would be liable for 70% of the face amount of the policy. It will be noted from the provisions of paragraphs 17, 18, 19 and 20 that it is "acreage" and not the "value of the crop" that is the determining factor in the coverage of the policy. If the policy was an "open policy", as contended by the appellant, the exact number of acres, so far as the liability of the appellant is concerned, would not be important. But the exact acreage is made a material element by the terms of the policy. Paragraph 19 goes so far as to provide that in case of disagreement as to the exact acreage the insured was to furnish a competent surveyor to show the exact amount of land and that the insured's failure to do so should render the policy void.

In paragraph 20 it was provided that the liability of the company should be reduced "in the same proportion as the proportion in which said crop, or any part thereof, is reduced by cutting, * * * or otherwise harvesting". We think this stipulation could be reasonably construed only to the effect that if the crop was one-third harvested the face amount of the insurance should be reduced one-third, and if one-half harvested the insurance should be reduced one-half, and this irrespective of the value of the portion harvested or that remaining in the field. As was said in the Mathers case [31 S.W.2d 1097], paragraph 22 does not refer to "the value of the crop nor the value of the wheat * * * destroyed as the measure of appellee's damages". Moreover, paragraph 14 of the policy provides that the company should not be liable for any loss unless the loss equals or exceeds 5% of the particular crop so damaged. In this provision no reference is made to the value of the crop. It is predicated solely upon the percentage of damage to the crop which fact, we think, is at least persuasive in support of the interpretation that for a loss equal to or in excess of 5%, the liability of the company should be based upon the percentage of the damage to the crop insured regardless of its value. In any event, if the policy is susceptible of two interpretations we are compelled, under the authorities, to adopt the one most favorable to the assured. Couch's Cyclopedia of Insurance Law (Vol. 1) 392, para. 188. It is therefore our opinion that the policy in issue was a "valued policy" and there was no error in the court's permitting a recovery without allegation and proof of the value of the wheat damaged and destroyed by hail.

■■ In connection with appellant's second contention, as above set out, no statement is made under the propositions thereon as to what requested defensive issues the court failed to submit and about which the complaint is made, and we are not compelled to search the record to find such requested issues. However, assuming from the insufficient statement made by the appellant that the issues referred to relate to the purported affirmative defense alleged by the appellant in regard to damage from worms, freeze, rust, etc., we have reached the conclusion there is no error in the court's refusal to submit these issues. The pleadings of the appellant, when carefully analyzed, reveal that in connection with its allegations as to damages by freeze, rust, worms, etc., the appellant was merely contending that the appellee was seeking damages for these losses as well as those resulting from hail, and that the appellant should be relieved from liability upon all damages other than hail. The appellant nowhere asserted that the damages were the result of these other causes and not from hail, but merely asserts that if the crop was damaged by hail it was also damaged by these other causes. There was no provision in the policy to the effect that if the crop was damaged by other causes in addition to hail that the appellant would not be liable for damages resulting directly from hail. It is evident from the pleadings of the appellee that the only damages sought by it were those resulting from hail. If appellant's pleadings should be held to present these other causes as an affirmative defense there was no allegation as to the amount of damage caused by the freeze, rust, worms and the like, and there was no evidence introduced to show the amount of the damages resulting from these sources. All of the witnesses who testified as to the amount of damages suffered by the crop based their calculations on hail damage only and the issues submitted to the jury excluded all damages except those directly resulting from the two hails. Under such circumstances it is our opinion that no defensive issues were raised and the assignment is therefore overruled.

■■ The third contention of the appellant is presented under two propositions. The first is that the failure of the assured within forty-eight hours from the second hail to notify the appellant of the loss by registered mail, as provided in the policy, precludes a recovery by the appellee for the second loss. The other proposition is to the effect that it was error for the court to predicate a recovery for the second loss on an issue inquiring of the jury the damage occasioned to the original crop since the condition of the original crop had been materially changed by the hail of May 27, 1938.

Although oral notice to the company's agent at Vernon was admittedly given the next morning after the second hail, it is true that no written notice of the second loss was given by the appellee. It is also true that the policy provided for a written notice of the damage by hail to be sent to the company by registered mail

within forty-eight hours after such loss. It was further provided in the policy that such company should not be liable for any loss or damage unless such notice was so furnished. It was also stipulated that notice to any agent of the company should not constitute notice to the company, and in connection with this particular provision, since the appellant is a corporation, we wonder in what other manner the appellant could have received the notice except through an "agent". All of these stipulations were clearly in violation of article 5546 of the 1925 Revised Civil Statutes of Texas, and, under the facts of this case, we think are unreasonable on their face. Western Indemnity Co. v. Free and Accepted Masons of Texas et al., Tex.Com.App., 268 S.W. 728; Ætna Life Ins. Co. of Hartford, Conn. v. Griffin, 58 Tex.Civ.App. 198, 123 S.W. 432, writ denied; St. Paul Fire & Marine Ins. Co. v. Pipkin, supra; Royal Casualty Co. v. Nelson et al., Tex.Civ.App., 153 S.W. 674; Fidelity & Casualty Ins. Co. of New York v. Mountcastle, Tex.Civ.App., 200 S.W. 862; First Texas State Ins. Co. v. Hare, Tex.Civ.App., 180 S.W. 282. Although the appellee did not give written notice of the second hail, it did give written notice of the first hail as required by the policy. As above stated it also gave oral notice to the local agent of the appellant on the morning following the second hail. The written notice of the first loss was mailed on May 28th, the day after the first hail, yet the evidence shows that no person appeared to make inspection of the premises or discuss the loss with the appellee until June 11, 1938, which was over a week after the second hail. Moreover, a formal proof of loss showing both the hails of May 27th and June 3d was made on July 10th and sent to the company, which was within sixty days after the date of either of the hails. Under these conditions, and in the absence of any showing that the appellant was prejudiced in any manner by the delay, we think the contention of the appellant in this respect is without merit.

In regard to the other proposition above mentioned we think the objection urged is hypercritical. All of the evidence of the witnesses testifying as to the percentage of loss was to the effect that the first hail caused a loss of a certain per cent of the entire crop and that the second hail caused another loss of a certain per cent of the entire crop. The first special issue submitted by the court inquired of the jury if the wheat crop of the appellee located on Section 25, Block 14, H. & T. C. Ry. Co. Survey in Wilbarger County, Texas, was damaged by hail on May 27, 1938. The fourth special issue inquired of the jury if the wheat crop of the appellee, described in Special Issue No. 1, was damaged by hail on June 3, 1938. Both of these issues were answered in the affirmative. By the answer to the third special issue the jury found that the hail of May 27, 1938 resulted in a damage of 60% to appellee's wheat crop described in Special Issue No. 1. In answer to the fifth special issue the jury found that the hail of June 3, 1938, resulted in a 10% damage to appellee's wheat crop as described in Special Issue No. 1. The wheat crop described in Special Issue No. 1 referred to such crop before the same was damaged by any hail. Under such circumstances we think no reasonable conclusion could be drawn other than that the jury was finding an aggregate of 70% damage to the whole wheat crop by reason of both hails.

Our original opinion is withdrawn, the appellant's motion for rehearing is overruled, and the judgment of the trial court is affirmed.