H. B. LINCH, APPELLEE, V. HARTFORD FIRE INSURANCE COMPANY, APPELLANT.

292 N. W. 27

FILED MAY 10, 1940. No. 30783.

Beatty, Maupin, Murphy & Davis and Myers & Snerly, for appellant.

Frank M. Johnson and R. L. Smith, contra.

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

Paine, J.

Plaintiff recovered a judgment for $989.53 for damages by hail on July 30, 1937, to 170 acres of spring wheat in Deuel county, Nebraska. Motion for new trial being overruled, defendant appealed.

The amended petition alleged that plaintiff owned the north half of section 31-13-43, Deuel county, Nebraska, and that the defendant company was authorized to do a hail insurance business in Nebraska; that plaintiff applied to the agent in Big Springs, and was issued a policy of insurance at $6 an acre, or a total sum of $1,020. Plaintiff alleged that his spring wheat was totally destroyed by hail on July 30, 1937, said crop having then a value of more than $6 an acre over and above the cost of harvesting, storing, and marketing; that the defendant refused to pay for the loss, and plaintiff prayed judgment for the full sum of $1,020.

The defendant admitted issuing the policy, and denied that the plaintiff paid the premium of $102, but alleged that he gave only a promissory note. Defendant further denied that the wheat was totally destroyed by hail, although admitting that a hailstorm occurred on July 30, 1937, but alleges that the wheat at the time of the hailstorm had no value over and above the actual cost of harvesting, storing, and marketing the same; admits that defendant has not made any payment.

In the answer the defendant also sets out paragraph 14 of the policy, which provides that the company shall not be liable for loss unless such loss equals 5 per cent. or more of the crop so damaged, nor shall be responsible for any loss to said crop from any other cause or causes which may have injured the crop, and if the crop has been injured or damaged from any other cause, so as to preclude a profit over and above the actual cost, there shall be no recovery under the hail insurance policy.

Defendant further alleges that the crop of wheat was damaged by drouth and hot winds prior to the hailstorm to such an extent as to preclude any recovery under this policy, and that its value at the time of the hailstorm was

not equal to, or in excess of, the cost of harvesting, storing, and marketing the same, for which reason the defendant is not liable to the plaintiff in any sum whatever; and further alleges that any such part of the wheat crop which had not been destroyed by drouth and hot winds had matured prior to the date of the hail, and if plaintiff suffered any loss to that portion of the crop it was suffered by the plaintiff by reason of his failure to cut and harvest the crop prior to the date of the hailstorm.

Defendant says that plaintiff's promissory note of $102, given in payment of the policy for hail insurance, was due and payable on August 15, 1937, and that no part of the note has ever been paid; that on November 22, 1937, defendant tendered to the plaintiff said note and chattel mortgage securing the same upon the 170 acres of wheat, and the plaintiff refused to accept the same from the defendant, but, should the plaintiff recover damages, defendant is entitled to an offset in the sum of $102, with interest at 9 per cent. from August 15, 1937, upon said promissory note.

Plaintiff in his testimony admitted that there were two days of hot winds in the latter part of June, which damaged the prospects to some extent for a wheat crop, but even after the hot winds, and the damage by some two weeks of dry weather, the wheat would still have made ten bushels per acre. On cross-examination plaintiff admitted that the drouth and hot winds did cut down the crop of wheat about 50 per cent.

Plaintiff called as a witness the agent of the company who had written plaintiff's insurance, P. C. Redfern, also A. J. Lane, the adjuster for the insurance company, who lived in Chicago, and rested his case in chief on the evidence of the three witnesses. The defendant thereupon moved the court to instruct the jury to return a verdict in its favor, but said motion was overruled.

The defendant called as witnesses Guy Pidgeon, a farmer, whose property is about three-fourths of a mile from the plaintiff's; Lee Pidgeon, a farmer, whose property is half a mile north of plaintiff's; John Wilson, a farmer, whose

property is located one mile north of plaintiff's property; Otto Brooks, a farmer, who owns two quarters of land north of Chappell, and who was out on the plaintiff's wheat in 1937; Phelix Grant, a farmer, who represents the Farmers Mutual Insurance Company of Nebraska, and who was over the Linch land; Ray W. Harr, who is an independent adjuster, residing at McCook; Herman Johnson, who farmed the land directly west of the plaintiff's land, and had 64 acres planted to wheat. Other farmers who testified for the defendant were Lorenz Ebke, Erick Lief, who farmed about a mile north of plaintiff's land, and August Anderson, a farmer living directly across the road to the north of plaintiff's land.

It would require too long an opinion to outline the testimony given by each of the farmers who testified for the insurance company, but the general effect of their testimony was that the plaintiff's wheat crop had been severely injured by the hot winds, and would not have produced more than a bushel or two per acre if the hail had not struck it. It appeared that the best crop of wheat within two miles of plaintiff's farm produced only five bushels per acre, and the effect of this testimony was that the hot winds and drouth had so seriously affected the plaintiff's wheat crop and shriveled it that it was practically worthless before the hail struck it, to say nothing of the cost of harvesting the same, or cutting it for hay.

The plaintiff on cross-examination brought out that one of the witnesses' wheat crop had been winter-killed, while several admitted they had not carefully examined plaintiff's crop; that the yield was spotted that year, and every field would have to be judged on its own merits. Generally, the testimony of these farmers was considerably modified by their cross-examination, as well as by the rebuttal evidence.

After considering this evidence of the neighbors and wheat growers in that vicinity, eleven members of the jury returned a verdict for $1,045, which was more than the plaintiff had sued for in his petition, which excess was properly remitted by plaintiff.

The defendant insists that the plaintiff claims that the valued policy law applies to this hail insurance policy. As we understand, the plaintiff makes no such claim. He recognizes that the valued policy law of Nebraska, as found in section 44-344, Comp. St. 1929, applies only to real property, and when it is totally destroyed by fire, lightning, or tornado, the amount of the insurance written shall be taken as the amount of the loss.

However, the plaintiff does claim that the same rule does apply to this hail loss, and to support his theory he cites us to 29 C. J. 208, which says: "Where the policy fixes the value of the grain crop per acre, and provides for payment of the loss on the basis thereof, insured may recover on that basis regardless of the actual value of the grain destroyed."

In addition to this authority, plaintiff relies upon three Texas decisions: *St. Paul Fire & Marine Ins. Co. v. Pipkin,* 207 S. W. (Tex. Civ. App.) 360; *Fidelity Union Fire Ins. Co. v. Mitchell,* 249 S. W. (Tex. Civ. App.) 536; *Fidelity Union Fire Ins. Co. v. Hicks,* 250 S. W. (Tex. Civ. App.) 1084; and the above text in Corpus Juris gives the first of these three cases as the authority for its statement, the holding being as follows: "The parties to an insurance contract may agree upon the value of the property insured and the specific amount to be paid for its loss or damage, and, in the absence of fraud, such agreed valuations are conclusive." *St. Paul Fire & Marine Ins. Co. v. Pipkin, supra.*

In the case at bar, section 14 of the policy provided in part: "This company shall not be liable for loss or damage by hail to any crop herein described or any part thereof unless such loss or damage equals five per cent. (5%) or more of the particular crop so damaged, at date of loss; nor, except for such portion as is traceable directly to hail, for any loss or damage to any crop herein described or any part thereof, from any other cause or causes combined with hail, nor for any loss or damage by hail to any crop herein described, or any part thereof, where such crop has been so injured or damaged from any other cause or causes as to preclude a profit over and above the actual cost of harvest-

ing, storing and marketing said crop; nor for any loss or damage by hail resulting from the neglect or failure of the insured to cut, dig, pick, pull or otherwise harvest matured crops."

Paragraph 21 of the policy reads: "In the event that any crop herein described is damaged or destroyed by hail, the amount payable hereunder shall in no event exceed the same percentage of the amount of insurance applying to the particular crop so damaged or destroyed at the date of loss, as the *ascertained percentage* of *loss or damage by hail only bears to the whole of the particular crop* or crops so damaged or destroyed at the date of the loss; nor in any event exceed the actual loss or damage sustained by hail only, nor exceed the amount of insurance applying to the particular crop so damaged or destroyed."

The same contention as to the valued policy rule was made in the case of *Hemmer-Miller Development Co. v. Hudson Ins. Co.*, 59 S. Dak. 129, 238 N. W. 342. In a unanimous opinion, the court discussed the same three Texas cases cited hereinabove, and said there was express provision in the policies in each of the three Texas cases that, in the event of total destruction of crops, "the amount insured per acre would be paid by the insurer, and in the event of partial damage the insurer would pay the same percentage of the amount insured per acre as the crop destroyed bears to the whole crop. The provisions for proof of loss in those policies required proof, not of the actual value of the crops destroyed, but of the 'percentage of damage.'" The South Dakota court held: "Hail insurance policy, indicating parties did not intend fixed valuation of crops insured, construed to be open, and not valued, policy, preventing recovery thereon without proving actual value of crops damaged."

From the quotations from the policy, and an examination of the entire policy, and such decisions as we have found, we have reached the conclusion that the parties in this case did not, by the application, or the terms of the policy, fix the value of the wheat insured against hail in this case, but the

value would be reached by following the plan outlined by the policy.

Another error relied upon by the defendant for reversal of the case states that the court failed to give any instruction to the jury as to the measure of damages applicable in the case at bar. This was a difficult case in which to arrive at the damages suffered solely as the result of the hailstorm, due to the fact of the hot winds and drouth affecting the wheat before the hailstorm struck.

It is always the duty of the court to instruct the jury as to the proper basis upon which damages are to be estimated. The jury should be fully and fairly informed as to the various items or elements of damage which they should take into consideration in arriving at their verdict, otherwise the jury may be confused and misled.

It is possible that the trial judge failed to give an instruction upon the measure of damages on the theory that, if there was a loss by hail, the policy provided for the payment of a full loss of $6 an acre under the terms of the policy. However, the defendant submitted a proper instruction, being defendant's No. 7, which was refused by the court, and read as follows: "You are instructed that the measure of damages for the loss or destruction of a growing wheat crop is the value thereof in the condition in which it exists at the time of its destruction, and where the crop has matured the value is ascertained by computing the market value thereof, less the necessary costs of harvesting, threshing and transporting such crop to market."

This instruction states the elements of loss to be considered, and is supported by *Pulliam v. Miller*, 108 Neb. 442, 187 N. W. 925, and *Morse v. Chicago, B. & Q. R. Co.*, 81 Neb. 745, 116 N. W. 859.

As we gather from the twelve pages of instructions given the jury, the pleadings were practically copied in full, and the only assistance given the jury in finding the damages was by quoting and running together a number of sections from the policy. It may be possible for one trained in law to ascertain the method of finding the loss from these pro-

visions cited from the policy, but such an instruction does not well meet the needs of a jury in the difficult task of finding and returning the fair amount of plaintiff's loss, if any, by their verdict.

To sustain the contention that the jury were confused about the measure of damages, affidavits of the foreman and the one juror who refused to sign the verdict were introduced at the hearing on the motion for new trial, and attached to the bill of exceptions as exhibits.

Affidavits of jurors as to their deliberations are incompetent for the purpose of impeaching the verdict. *Trimble v. State,* 118 Neb. 267, 224 N. W. 274; *Bonacci v. Cerra,* 134 Neb. 588, 279 N. W. 314; *Johnson v. Parrotte,* 34 Neb. 26, 51 N. W. 290; *Palmer v. Parmele,* 104 Neb. 30, 175 N. W. 649.

Copying pleadings was disapproved in *First Nat. Bank v. Davis,* 123 Neb. 304, 242 N. W. 655, and in *Merritt v. Ash Grove Lime & Portland Cement Co.,* 136 Neb. 52, 285 N. W. 97, the subject was treated at some length.

In the case at bar, the instructions were not to be commended, and the failure to give a clear-cut, definite instruction on the measure of damages was prejudicial error, and left the jury very much confused.

Twenty-three errors were relied upon for reversal, but, as the case must be retried, many of these alleged errors will doubtless not occur again.

REVERSED.