898

## LEE et al. v. NATIONAL LIBERTY INS. CO. OF AMERICA.

### No. 77.

District Court, N. D. Texas, Wichita Falls Division.

Nov. 27, 1940.

Berry, Warlick & Bunnenberg, of Vernon, Tex., for plaintiffs.

Thompson, Knight, Baker, Harris & Wright (by William Neary and Will C. Thompson) all of Dallas, Tex., for defendant.

ATWELL, District Judge.

The question involved is somewhat difficult. The courts have been seldom called upon to consider and find the differences between an open or valued policy.

Such learning as counsel has presented has been carefully considered.

A salient and very important consideration is the agreement of the parties. That, of course, is high ground. At first blush, it appeared to me that the contention of the plaintiffs had a great many elements of injustice in it. They seemed to seek pay for what they did not have. They might have overinsured what they did have, which, of course, would be a joint fault, but which would not justify a court in taking part in the fault, even though it was joint. After studying this contract and the contracts which have been examined by appellate courts, in cases cited, I find a number of differences. In this contract there is no question of the value of the crop, except in Section 13 which relates to an entirely different situation. It provides: "However, in the event the total insurance per acre exceeds this limit, or exceeds the value of the crop, this company shall be liable only for its pro-rata part of the value of the crop." The Section deals with a situation that is not applicable here. It means a situation where there is an entirely different acreage value, and an entirely different basis for insurance value.

There is also another question which has been raised by the defendants in their sensible suggestions to the court, and that is that when the phrase, "not exceeding," is used in a contract, it marks a maximum and indicates that there could be a minimum. That is, that the resultant damage cannot be over that and may be less than that.

The authority of Stuyvesant Insurance Company v. Jacksonville Oil Mill, 6 Cir., 10 F.2d 54, is a respected authority upon that proposition, but a study of that case reveals that it differs in the essential agreement respect. In that case, the phrase, "not exceeding," was used a number of times in places where it could mean nothing else than that which the court found it to mean. While in the case before us the phrase, "not exceeding," is used only with reference to the insurance that is placed upon an acre. It is nowhere used with reference to the total. The total being $9,525. That $9,525 is arrived at by multiplying 635, the number of acres, by the limit of insurance, to-wit, $15 per acre. The $9,525 is not anywhere in the policy in juxtaposition with the phrase, "not exceeding."

It may be observed here—I don't know that it is of any value—that the amount of premium charged, $666.75, is about $1 per acre, a little bit more than that, there being 635 acres. Had there been a thirty-bushel crop of dollar wheat, the value would have been $19,050. A twenty-bushel crop of dollar wheat would have meant $12,700. Yet, a recovery for total hail destruction would have been but $9,525.

The next place where the phrase, "not exceeding," is used, is Section 16. In that section, there is a provision for re-planting and re-seeding, if the loss or damage by hail occurs at such a time as that re-seeding or re-planting can be had for re-growth and maturity during the season the crop is insured; manifestly without any application to the facts in this case. That is

merely an option that the insurer is given, if and when that contingency happens.

Section 21 relates to an interesting feature of the agreement: "There shall be no abandonment to the company of the crop insured hereunder."

Again, Section 23 is ground for thought along this line, I think, because it provides that, if there is any adjustment of loss to any crop, the total amount of insurance applying to said crop, or any part, shall be reduced in the amount allowed for each and every loss.

Linch v. Hartford Fire Ins. Co., Neb., 292 N.W. 27, 29, 129 A.L.R. 1063, I consider the strongest case for the defendant's theory. It is a well considered case. But while it is upon an hail insurance policy, the wording of the agreement, as set out in the opinion, so far as it is set out, is somewhat different to the language that we are studying here. The kernel of the case is shown in the court's statement that: "From the quotations from the policy, and an examination of the entire policy, and such decisions as we have found, we have reached the conclusion that the parties in this case did not, by the application, or the terms of the policy, fix the value of the wheat insured against hail in this case, but the value would be reached by following the plan outlined by the policy." There is no such plan in the contract in this case, and there appears to be a plan in that case.

The Texas cases which bear upon this question I have left to the last. They come to us from the court of Civil Appeals of the Amarillo Division. One case that is hardly so well considered comes from the Eastland Court of Civil Appeals. There are in Texas eleven courts of Civil Appeals. Some of the cases of the Amarillo Court of Civil Appeals have gone to the Supreme Court of the state, but in no instance has that court written its views with reference to this delicate and highly interesting question. It has merely refused certiorari, or dismissed certiorari, if granted. That the cases may have arisen mostly, or altogether, in the Amarillo Division, is due to the fact that it is largely the wheat portion of the state. I don't mean exclusively, for wheat is grown all over the state, but to a greater extent in that part. Such cases construe such a contract as we have here as a valued policy. St. Paul Fire & Marine Ins. Co. v. Pipkin, 207 S.W. 360; Fidelity Union Fire Ins. Co. v. Mitchell, 249 S.W. 536; Northwestern Fire & Marine Insur-

ance Co. v. Allred, 19 S.W.2d 916; Insurance Company of North America v. Mathers, 31 S.W.2d 1095; National Liberty Insurance Company v. Herring National Bank, 135 S.W.2d 219. Those cases are definitely helpful and persuasive. First and foremost, one who executes a contract in a jurisdiction where the courts of that particular jurisdiction are construing that contract in a certain way, may not be bounden by such construction in a future contract, but it might not be going too far to say that such construction would assist a trial court, when passing upon a subsequent contract, in determining the intention of the parties. Of course, we know that where the Congress, or the Legislature, passes an act after the courts shall have held a certain state of facts to result in a certain manner, then it is assumed by the courts that the lawmaking body had the judicial construction in mind when it passed a newer statute.

Nor are the cases accepted, of course, as any basis for the application of the ruling in Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, but merely in the respect that I have indicated.

Still, see West v. American Telephone & Telegraph Co., 61 S.Ct. 179, 85 L.Ed. ——, decided by United States Supreme Court December 9, 1940, which considers views of appellate state courts, lower than the highest court, as evidencing the state law, and that federal courts should follow rather than prescribe a different rule. Also, Stoner v. New York Life Ins. Co., 61 S.Ct. 336, 85 L.Ed. ——, decided December 23, 1940.

Here the value of the crop on the undisputed number of acres seems to have been agreed upon as liquidated damages. It is the amount insured, as between the parties. Under an open policy, the insured must prove the true value.

With those observations, I make the following findings:

### Findings of Fact.

1. Some months prior to March 30, 1938, the plaintiffs planted to wheat six hundred and thirty-five acres in Section 25, Wilbarger County, Texas. Two-thirds of that wheat was to be theirs and one-third to be the property of the landlord, Herring National Bank of Vernon, Texas.

2. When the wheat came up, and in order to save it from the rigors of freezing

weather, they pastured it in a proper manner.

3. On March 30, 1938, they insured their two-thirds interest with the National Liberty Insurance Company of America, by its policy No. Tex 1046. Such policy was an "hail" policy. This policy insured against "all direct loss or damage by hail to the property described." The amount stated in this policy is $9,525. The premium was $666.75. This premium was paid. At that time the wheat was a growing crop and was insured in the policy, "against direct loss or damage by hail," in the aforesaid amount of $9,525.

4. The crop of wheat so insured was 635 acres in said section of this county. The insurance per acre not exceeding $15. The premium charged was based on the insurance in that amount. There has been no tender, or return, of any part of the premium in this case.

5. Sections 17, 18 and 19 of the contract of insurance show that acreage was its basis and not the amount of the crop raised. Section 13 also deals with acreage, but does not bear upon this case, since the valuation per acre as provided in the contract is less than the valuations treated in that section; as is, also, the land involved of a different sort from that mentioned in that section.

6. Section 16 of the contract deals with contingencies not arising here, but tending to support the finding that the contract deals with acreages and not with the value of that which is produced thereon.

7. Sections 17, 18 and 19 deal with acreages and not with crop values.

8. Section 20 deals with a proportion which shall be used in the event of harvesting only.

9. Sections 22 and 24 deal with percentages of the crop lost or damaged, and in no event with its value. This is also true of Section 27. Sections 24 and 27 also deal with proofs of loss, but do not prescribe any valuation other than the proportion fixed in the contract.

10. On May 27, 1938, a hail damaged and destroyed 60% of the crop. At that time the crop was in good condition, standing, and uninjured by rust, worms, smut, or wind. On June 3, 1938, another hail damaged and destroyed 10% of the remaining undamaged crop. At that time the crop which remained as undamaged and undestroyed from the May 27th hail was substantially unharmed by worms, rust, smut, or wind.

11. Due to unfavorable weather, harvesting was delayed until about July first. The remaining approximately 36% was gathered at that time, and produced 2,735 bushels, which is about 4¼ bushels per acre. It brought 47¢ per bushel. It cost $1.50 an acre to harvest; 3¢ to haul it; and 3½¢ storage.

12. The insured wheat crop was a better crop than that raised upon either side of it, and would have produced 20 bushels per acre if it had not been damaged and destroyed by the two hail storms.

### Conclusions of Law.

1. The parties having agreed upon a valued crop, and the same having been 64% damaged and destroyed by hail within the terms of such agreement, and due proofs having been made in accordance therewith, the plaintiffs are entitled to recover 64% of such value as fixed in the policy, to-wit, $9,525, together with legal interest.