PETERSON, Appellant, v. GREAT AMERICAN INSURANCE CO., Respondent

(52 N. W.2d 479)

(File No. 9218. Opinion filed March 17, 1952)

See also 73 S. D. 589, 47 N.W.2d 284.

336

**Donald J. Porter,** Chamberlain, **M. Q. Sharpe,** Kennebec, for Plaintiff and Respondent.

**Bailey, Voorhees, Woods & Fuller,** Sioux Falls, for Defendant and Appellant.

RUDOLPH, J. Plaintiff brought this action to recover under a policy of hail insurance for the damage sustained by his crops from hail. The trial court submitted the case to a jury which returned a verdict for plaintiff. Defendant has appealed.

Appellant seeks a reversal upon four separate grounds. First, it is contended the policy is an open policy and plaintiff failed to prove any damage. Second, the evidence fails to show the crop had reached an insurable stage. Third, plain-

tiff failed to give notice of loss as required by the policy. Fourth, plaintiff is bound by a release which he signed.

We are of the view that there must be a reversal on the first ground. It is our opinion for reasons hereinafter set forth that the policy is an open policy, and that plaintiff failed to prove the damage he sustained. However, in view of the fact that this holding requires a reversal but does not settle the controversy we deem it necessary to discuss other alleged error.

The policy provides, Section 8: "On grain crops * * * insurance shall not take effect until at least 75% of the plants have jointed."

The crops suffering the alleged damage were grain crops within the meaning of this provision of the policy. The inquiry goes to the question of whether 75% of the plants had jointed at the time of the hail on May 25. Evidence was presented showing that growing grain crops are recognized as having several stages of growth. So far as here material these stages are as follows: First, the seedling stage, second, early stooling, third, completely stooled and fourth,. jointing stage. Appellant contends that unless 75% of the crop had reached the jointing stage of growth the insurance was not in effect, and that the evidence fails to show the crop had reached this stage. The court instructed the jury as follows:

"The word 'joint' as applied to wheat, oats or barley means the node, knob, or hard enlarged lump in the stem of the grain which joins or connects the hollow segments of the stem.

"A plant of wheat, oats, or barley is jointed, within the meaning of section 8 of said policy of insurance, when the plant has reached that stage in its growth that the stem appears above the gound, containing one or more joints or nodes visible to the eye as the plant stands growing in the field."

We believe this is a fair and reasonable construction of the policy. We cannot concur in respondent's contention that grain is jointed within the meaning of the policy from the time the crown joint forms below the ground when the grain sprouts. Such a construction of the policy

would render Section 8 meaningless. Whether the evidence in the present record supports the verdict of the jury on this issue we do not determine. Should the case be retried the evidence can be presented and limited to the issue of whether the grain was jointed as that term has been construed herein, and the confusion found in the present record due to the conflicting views as to the meaning of the term will be obviated.

 The policy provides, Section 19: "It is agreed that Notice of Loss to an Agent of this Company shall not constitute notice to the Company within the intent and meaning of this policy."

The company is a corporation and as such can act only through its agents. There must be some qualification to the meaning of the word agent as used in this section of the policy, otherwise it would be impossible to give notice to the company. Just what this qualification might be under all circumstances we need not determine. The evidence in this case is undisputed that Mr. Kelly, who sold this insurance to the plaintiff, signed the policy as agent, delivered the policy and collected the premium thereon. These facts make Kelly the general agent of the company in the sense that his knowledge becomes the knowledge of the company and that he has prima facie authority to waive conditions as to notice and proof. Bruins v. Anderson, 73 S.D. 620, 47 N.W. 2d 493. Plaintiff notified Mr. Kelly of the hail storm the day after its occurence, and Kelly immediately inspected the damage. He advised plaintiff that there was no liability under the policy because the grain had not jointed. These facts constitute a waiver of the notice of loss. Bruins v. Anderson, supra. SDC 31.0706.

 In July following the May hail storm the company sent an adjuster to examine the fields. This adjuster also advised plaintiff that there was no liability under the policy because the grain had not jointed and obtained from plaintiff a release of liability for the company. The record presents the question of whether the trial court was justified in submitting to the jury the question of whether this release was obtained from the plaintiff by fraud. Whether the grain in this case had reached an insurable stage we be-

lieve is a mixed question of fact and law. The stage of the growth of the grain was, of course, a question of fact, but whether it had reached an insurable stage within the meaning of the policy was a question of law. The representation of the adjuster was that it had not reached this insurable stage and that there was no liability under the policy. If, as a matter of fact and law, the grain had reached an insurable stage within the meaning of the policy then the representation made by the adjuster concerning no liability would be false. Whether the adjuster made the representation in good faith is, we believe, under the record in this case, a question of fact.

■■ The plaintiff testified he relied upon the representation of no liability when he signed the release. This we believe he was privileged to do. Of course, whether he actually relied thereon is a question of fact. Insurance is a complicated transaction, and its niceties are not generally understood by the laymen. The cases recognize this fact and place emphasis thereon. In the case of Colby v. Life Indemnity & Investment Co., 57 Minn. 510, 59 N.W. 539, 542, the court said: "The disparity of the parties must also be borne in mind. Ordinary men are not usually acquainted with all the intricacies of insurance contracts, while the insurer is presumed to be an expert on the subject; and it is a matter of common knowledge that the insured are accustomed to rely largely on the insurer for information as to their rights and liabilities."

See also Stark v. Equitable Life Assurance Society, 205 Minn. 138, 285 N.W. 466 and cases cited therein. The Restatement, Torts, in the comment to Sec. 542, page 96, states: "The complexities and specializations of modern commercial and financial life have created many situations in which special experience and training are necessary to the formation of a valuable judgment. In such case if the one party has such experience or training or purports to have them, the other, if without them is entitled to rely upon the honesty of the former's opinion and to attach to it such importance as is warranted by his superior competence."

And in the comment to Sec. 545, it is stated: "Thus the ordinary layman dealing with a real estate or insurance

agent may be justified in relying upon the latter to know enough in regard to real estate and insurance law to give a reliable opinion upon the simpler problems arising therein."

So in this case we believe that if a jury should determine under the facts presented that the grain had reached an insurable stage, that the adjuster falsely and fraudulently represented to the plaintiff that it had not, and plaintiff relied upon this representation in signing the release, the jury should disregard the release because obtained by fraud.

The holding that this policy is an open and not a valued policy is based upon the holding of this court in the case of Hemmer-Miller Development Co. v. Hudson Insurance Co., 59 S. D. 129, 238 N.W. 342, 343. It was stated in that case: "An insurance policy must be so interpreted as to give effect to the mutual intention of the parties, as it existed at the time the contract was executed, and, in determining the intention of the parties, all the provisions of the policy must be considered and construed together, * * * ."

As in that case so in this, the policy fixes no value upon the crops insured, it simply provides that the insurance shall not exceed a certain total amount and a certain amount per acre. The stipulations and conditions of the policy while not in the exact words of the policy construed in the Hemmer-Miller case are the same in substance. Paragraph 15 of the policy is as follows:' "In the event that any crop herein described is damaged or destroyed by hail, the amount payable hereunder shall in no event exceed the same percentage of the amount of insurance applying to the particular crop so damaged or destroyed at the date of loss, as the ascertained percentage of loss or damage by hail only bears to the whole of the particular crop or crops so damaged or destroyed at the date of the loss; nor in any event exceed the actual loss or damage sustained by hail only, nor exceed the amount of insurance applying to the particular crop so damaged or destroyed."

Paragraph 11 provides: "This Company's liability is limited to loss or damage directly traceable to hail only.

This Company shall not be liable for loss or damage to any crop herein described, nor any part thereof, by causes other than hail; nor by causes combined with hail; nor for any loss or damage by hail only resulting from neglect, failure, or inability of the insured to cut, dig, pick, pull, or otherwise harvest matured crops; nor for grain recoverable by harvester or combine; nor where such crop has been so injured or damaged from any other cause, or causes, as to preclude a profit over and above the actual cost of harvesting, storing and marketing said crop. This Company shall not be liable for loss or damage by hail only unless such loss or damage at date of loss equals five per cent (5%) or more of the paritcular crop so damaged."

The substance of these two paragraphs is the same, we believe, as the language of the policy relied upon and discussed in the Hemmer-Miller case. The Nebraska court was called upon to construe a policy in all respects similar to the policy in this case, and relying upon the Hemmer-Miller case determined the policy was an open and not a valued policy. Linch v. Hartford Fire Ins. Co., 138 Neb. 110, 292 N.W. 27, 129 A.L.R. 1063. Under this policy the proof of loss is required to show the "amount of loss or damage", and not the "percentage of damage", which distinguishes this policy from the policies in the Texas cases referred to in the Hemmer-Miller case.

Appellant's motion for a directed verdict was based in part upon the insufficiency of the evidence to prove that plaintiff suffered loss from hail "or amount of any such" loss. Respondent contends that appellant failed to preserve his record on the issue of the failure to prove the amount of loss because he failed to take exceptions to certain instructions given to the jury. Under the holding of this court in the case of Federal Land Bank of Omaha v. Houck, 68 S. D. 449, 4 N.W.2d 213, it is not necessary to except to instructions to preserve a question on appeal, where the question is presented by a motion for a directed verdict. However, in this case the trial court instructed the jury on the measure of damages as follows: "* * * you will determine the percentage of loss suffered in that particular field or fields, as the case may be; and the amount which the plain-

tiff would be entitled to recover is the same percentage as applied to the amount of insurance, applying to the particular crop so damaged or destroyed; **provided, the amount found does not exceed the actual loss or damage sustained,** nor shall it exceed the amount of insurance applying to the particular crop damaged or destroyed."

The language of this instruction is the substance of Paragraph 15 of the policy above set out, and also the substance of Paragraph 4 of the policy in the Hemmer-Miller case. In construing Paragraph 4 in the Hemmer-Miller case [59 S. D. 129, 238 N.W. 344] this court said: "It is further stipulated in paragraph 4 that, in the event of partial destruction by hail, the amount payable under the policy shall be in proportion to the amount of insurance applying to the crop damaged as the damage from hail only to the crop bears to the sound condition of the crop damaged at date of loss, had no loss or damage occurred. The liability, however, is expressly limited to actual loss. The provision 'but in no event shall the company be liable for more than actual loss or damage sustained by hail' is manifestly applicable to both partial and total destruction of crops by hail."

It appears therefore that the instruction of the court submitted the case to the jury upon the basis that the policy is an open policy and proof of actual loss or damage was necessary. This is the theory for which appellant is contending, and there was no reason for appellant to except to the instruction.

■ ■ The only attempt by plaintiff to prove the value of his crop was by asking plaintiff one question as follows: "Do you know what the value of your wheat was on May 25, 1949?". Objection to this question was sustained and plaintiff made no further attempt to prove the value. The question failed to fix a time either before or after the hail storm, and the court was fully justified in refusing an answer. Certainly, because of objecting to this single question phrased as it was, defendant should not be held estopped to assert the failure to prove damages.

The judgment appealed from is reversed.

All the Judges concur.