FRANK BILLMAYER AND JENETTE BILLMAYER, PLAIN-
TIFFS AND APPELLANTS, v. FARMERS UNION PROPERTY
AND CASUALTY CO., DEFENDANTS AND RESPONDENTS.

No. 10878
Submitted June 11, 1965. Decided July 13, 1965.
404 P.2d 322

Sias & Hendrickson, Chinook, Oscar Hendrickson, Chinook, argued orally, for appellants.

Hauge, Hauge & Ober, Havre, Vance & Leaphart, Helena, Lester N. Hauge, Havre, and John T. Vance, Helena, argued orally, for respondents.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a judgment for plaintiffs in the sum of $16,423.95 against defendant, Farmers Union Property and Casualty Company, and in the sum of $13,955.78 against defendant, Wheat Growers Mutual Insurance Company. The action involved five separate hail insurance policies issued by defendants to plaintiffs. Plaintiffs claimed a sum of $27,884.70 against defendant, Farmers Union Insurance Company, hereinafter referred to as F. U. Co., and $24,477.22 against defendant, Wheat Growers Insurance Company, hereinafter referred to as Wheat Growers. Plaintiffs are appellants, being dissatisfied with the difference between the claims and the amounts allowed in the judgment.

The difference in the claims and the amounts allowed are a result of interpreting the policies in question. All of the policies are standard crop-hail policies. The causes were tried before the court without a jury.

Plaintiffs were solicited by an agent of F. U. Co. to purchase hail insurance on small grain crops including wheat, barley and oats. He purchased policies of insurance on June 3, 1963, on various acreages at a premium rate of generally $8.80 per acre with $40 per acre of insurance coverage on some wheat, $35 per acre on barley, $50 per acre on other wheat, $40 per

acre on other barley and $50 per acre on oats. On June 7, 1963, plaintiffs insured most of the same acreages with Wheat Growers at slightly lesser amounts per acre with almost the same premium rates. On the second insuring, plaintiffs made disclosure of their previous insuring.

On June 27, 1963, plaintiffs suffered a hail loss which later was agreed to as to the percentage of loss. The two insuring Companies offered to pay, not on the basis of the dollar value per acre shown on the policies of insurance, but only the cash value of the crop, taken by averaging the yields of neighboring lands.

The issue in the main before the district court became whether, as plaintiffs contended, that the crop-hail policies are "valued policies" and that recovery should be based on the percentage of damage to insureds' crops as applied to the total insurance limits, or whether the policies are "open policies" and that the recovery should be limited to the actual loss sustained.

The district court found that the policies were "open policies," and then went on to find the actual loss by using figures testified to by neighboring farmers as to yields and prices. Again we point out that the percentage of hail loss was agreed to. The specifications of error go to the question of interpretation of the policies as to whether they are "valued" or "open" policies. There were other problems, such as the pro-rata liability of each insurer, notice and proof of loss, set-offs of notes on premiums due, sufficiency of the evidence to prove actual loss and others, but this appeal is concerned with but the one issue as it is set forth above.

Each of the policies were identical in form with these provisions:

"*Prorata Liability.* This Company shall not be liable for a greater proportion of any loss than the amount hereby insured shall bear to the whole insurance covering the insured's interest in the crop(s) against the peril(s) insured, whether collectible

or not, except that no Federal Crop Insurance Corporation policy shall be prorated with this policy."

"*Determination of amount payable.* Unless otherwise provided, the maximum amount payable per acre hereunder because of loss occasioned by perils insured against, shall be in the same proportion to the amount of insurance applying per acre at date of loss as the ascertained percentage of physical destruction to the crop per acre by such peril is to the whole of the crop on such acre."

"*Limit of amount payable.* If the actual loss sustained by the insured is less than the amount payable as determined in the provision 'Determination of amount payable,' *then the amount payable shall be the actual loss sustained by the insured.* In no event shall the amount payable per acre exceed the amount of insurance applying to the particular acre of crop so damaged or destroyed." (Emphasis supplied.)

The Pro-rata liability clause above is not in contention except insofar as respondents argue that the word *loss* as used has significance. The Determination of amount payable clause above provides that the insurer will pay to the insured the percentage of the amount of insurance applying, as determined by the percentage of damage to the crop by hail. No problem exists about its meaning except that respondents argue that it applies in a situation where the amount of insurance does not exceed the actual value of the crops damaged.

But they say, where a situation of "over-insurance" exists, or put another way, where the amount of insurance exceeds the actual cash value of the crops damaged, then the next provision "Limit of amount payable" comes into play; and, they urge that the words italicized above "then the amount payable shall be the actual loss sustained by the insured" become words of limitation to the actual loss sustained by the insured plaintiffs. The district court adopted this theory as its conclusion of law.

We comment here that this, at first blush, sounds like a neat wrap-up of the problem except that, what or how can *actual loss*

of a growing crop with its many possibilities of a "bust," a "failure," a "poor crop," a "fair crop," a "good crop," an "excellent crop" or a "bumper crop," as the vagaries of success or failure are described, be measured at the time of loss, or, how is "over-insurance" determined when no failure to disclose or fraud exists and the companies retain the right to cancel or determine "over-insurance."

Without repeating all the terms of the policy, it can be fairly said, and the testimony revealed that the Insurance Companies retain the control on approval of applications as to limits; they charge and collect the premiums. If no losses occur they keep the premiums based upon the amount per acre. Losses are figured on percentages (agreed to here) attributable to the force of nature—hail.

The appellants' position simply is that this percentage is taken of the dollar limit of the policy, that is, that the dollar limit is an agreed value.

Respondents say the dollar limit is not applicable, but that the percentage loss is taken of the average yield per acre at an average price per acre.

In 44 C.J.S. Insurance § 48, p. 496, a valued policy is defined as one in which the parties agree on the value of the subject matter of the insurance. (And see R.C.M.1947, § 40-4302.)

An open or unvalued policy is one in which the value of the subject matter is not fixed by the policy, one in which the amount of liability is left open to be determined according to the actual loss, either by agreement of the parties, or on proof in compliance with its terms or with the rules of evidence. (And see R.C.M.1947, § 40-4301.)

Thus, we must determine the type of policy, an "open" one or a "valued" one. The policy is called a standard crop-hail policy and is headed Annual Percentage Form. Its information requires the number of acres, type of crop and amount of insurance per acre for each with a premium rate per acre; then,

the three provisions previously quoted. We note, the only use of the word "value" in the policy refers to a method of limiting insurance where variations in acreage occur. Also, no use of the word "indemnify" appears. Generally, it can be said that insurance indemnifies the insured against loss (R.C.M.1947, § 40-4301), but these policies clearly are not of that type. For example, if the farmer carries $10 per acre and has a fifty percent hail loss, he receives $5, not fifty percent of the value, nor fifty percent of the loss up to the limit of $10.

As previously indicated, at the time of taking the insurance, neither party can accurately estimate the value of the crop with a varying production as well as a varying price. The fixed matters are acreage, ownership, type of crop, and limits of policy; and a method is set forth for determining percentage of loss. Significantly, because of discussions appearing in cases from other jurisdictions, no method for determining value is set forth.

Thus, then we look again at the limiting words used in the paragraph "Limit of amount payable." There it is said: "If the actual loss sustained by the insured is less than the amount payable as determined in the provision 'Determination of amount payable' then the amount payable shall be the actual loss sustained by the insured. * * *."

The reference to "Determination of amount payable" refers to loss occasioned by perils insured against. In other words, losses due to drouth, insects, disease, and other matters are notably excluded. One witness testified that in the investigation here there was evidence of damage to the crop other than from hail. Thus, a reasonable interpretation of the words "actual loss" as used in the limitation paragraph is "actual loss due to hail" as distinguished from "actual cash value."

If there be any ambiguity in the policy it should be resolved against the respondents, since the policy form was provided by them. (See R.C.M.1947, § 40-3725; Scinski v. Great Northern Life Ins. Co., 110 Mont. 106, 111, 99 P.2d 218. John-

son v. Equitable Fire & Marine Ins. Co., 142 Mont. 128, 381 P.2d 778.)

Other jurisdictions have wrestled with this same problem. Respondents cite Borden v. General Insurance Co. of America, 157 Neb. 86, 59 N.W.2d 141, a fire insurance case. There, of course, the policy was held to be an "open policy." It was an indemnity policy, but the provisions are completely different than here.

Also cited are Hemmer-Miller Development Co. v. Hudson Ins. Co. of New York, 59 S.D. 129, 238 N.W. 342, and Linch v. Hartford Fire Insurance Co., 138 Neb. 110, 292 N.W. 27, 129 A.L.R. 1063; and Peterson v. Great American Insurance Co., 74 S.D. 334, 52 N.W.2d 479. These cases seemingly support the proposal that the policies are open. In the latter case the South Dakota Court relied on the Hemmer-Miller case and the Linch case and commented that "the proof of loss is required to show the 'amount of loss or damage,' and not the 'percentage of damage,' which distinguishes this policy from the policies in the Texas cases referred to in the Hemmer-Miller case."

We fail to see how this is significant. In Lee v. National Liberty Ins. Co. of America, 35 F.Supp. 898, the Federal District Court of the N. District of Texas said:

"Linch v. Hartford Fire Ins. Co. [138 Neb. 110], 292 N.W. 27, 29, 129 A.L.R. 1063, I consider the strongest case for the defendant's theory. It is a well considered case. But while it is upon an hail insurance policy, the wording of the agreement, as set out in the opinion, so far as it is set out, is somewhat different to the language that we are studying here. The kernel of the case is shown in the court's statement that: 'From the quotations from the policy and an examination of the entire policy, and such decisions as we have found, we have reached the conclusion that the parties in this case did not, by the application, or the terms of the policy, fix the value of the wheat insured against hail in this case, but the value would be reached by following the plan outlined by the policy.' There is no such

plan in the contract in this case, and there appears to be a plan in that case."

In National Liberty Ins. Co. v. Herring Nat. Bank (Tex.Civ. App.1939), 135 S.W.2d 219, the Texas Court held:

"* * * It will be noted from the provisions of paragraphs 17, 18, 19 and 20 that it is 'acreage' and not the 'value of the crop' that is the determining factor in the coverage of the policy. If the policy was an 'open policy,' as contended by the appellant, the exact number of acres, so far as the liability of the appellant is concerned, would not be important. But the exact acreage is made a material element by the terms of the policy. Paragraph 19 goes so far as to provide that in case of disagreement as to the exact acreage the insured was to furnish a competent surveyor to show the exact amount of land and that the insured's failure to do so should render the policy void.

"In paragraph 20 it was provided that the liability of the company should be reduced 'in the same proportion as the proportion in which said crop, or any part thereof, is reduced by cutting, * * * or otherwise harvesting.' We think this stipulation could be reasonably construed only to the effect that if the crop was one-third harvested the face amount of the insurance should be reduced one-third, and if one-half harvested the insurance should be reduced one-half, and this irrespective of the value of the portion harvested or that remaining in the field. As was said in the Mathers case (Insurance Company of North America v. Mathers) [31 S.W.2d (1095) 1097], paragraph 22 does not refer to 'the value of the crop, nor the value of the wheat * * * destroyed as the measure of appellee's damages.' Moreover, paragraph 14 of the policy provides that the company should not be liable for any loss unless the loss equals or exceeds 5% of the particular crop so damaged. In this provision no reference is made to the value of the crop. It is predicated solely upon the percentage of damage to the crop which fact, we think, is at least persuasive in support of the interpretation that for a loss equal to or in excess of 5%, the liability of

the company should be based upon the percentage of the damage to the crop insured regardless of its value. In any event, if the policy is susceptible of two interpretations we are compelled, under the authorities, to adopt the one most favorable to the assured. Couch's Cyclopedia of Insurance Law (Vol. 1), 392, para. 188. It is therefore our opinion that the policy in issue was a 'valued policy' and there was no error in the court's permitting a recovery without allegation and proof of the value of the wheat damaged and destroyed by hail."

In Twin City Fire Ins. Co. v. Grindstaff (Tex.Civ.App.1941), 152 S.W.2d 845, the court said:

"The policy involved in that case seems to be the same as the policy in the instant case, and all the reasons given by Judge Jackson as the basis of the conclusion that the policy there involved was 'a "valued policy" ' apply to the policy here. The same conclusion upon a policy of the same provisions was reached in National Liberty Ins. Co. v. Herring Nat. Bank, Tex. Civ.App., 135 S.W.2d 219. Other decisions to the same effect are St. Paul F. & M. Ins. Co. v. Pipkin, Tex.Civ.App., 207 S.W. 360; Fidelity Union Fire Ins. Co. v. Mitchell, Tex.Civ.App., 249 S.W. 536; Fidelity Union Fire Ins. Co. v. Hicks, Tex.Civ.App., 250 S.W. 1084, writ refused. A consideration of the provisions of the policy in suit in the light of the above decisions leads us to the conclusion that it was unnecessary in order to support a judgment for the plaintiff that the value of the crop destroyed, or the difference between the value of the crop damaged before and after the time of such damage, be proved. * * *

"If on the question here we even considered the provisions of the policy as having any bearing, it was the provision of paragraph 22 which we did have occasion to state in substance as follows: 'Paragraph 22 of the policy provides, in substance, that in the event the insured crop is damaged by hail the amount payable under the policy shall in no event exceed the *actual loss or damage* sustained by hail.' (Italics supplied.) We may have assumed that the words 'actual loss or damage' meant

the *value* of the crop destroyed, or difference between the value of the crop damaged before and after the hail. It is now, however, apparent that the words read in connection with the other provisions of the policy—many of them purposeless, unless the contract was 'a valued policy'—reasonably had reference to loss or damage representing the percentage of injury to the crop, and not the value of the crop. In other words, as said by Judge Folley in National Liberty Ins. Co. v. Herring Nat. Bank, supra: [135 S.W.2d 223], interpreting this same provision, and as had previously been said by Judge Jackson in the Mathers case, supra: 'Paragraph 22 does not refer to "the value of the crop nor the value of the wheat [barley] * * * destroyed as the measure of appellee's damages." ' "

█ We think the rationale of the Texas Court to be correct. These are, absent fraud or concealment, valued policies. The insurers retained the control to establish limits. The amounts prescribed per acre were not shown to be excessive nor impossible. It appears from the terms of the policies that the Insurance Companies intended to insure and receive the premium for the amount of insurance issued.

For the foregoing reasons, the judgment of the district court is reversed and the matter returned to the district court to enter findings and judgment consistent with what is herein said. It is so ordered.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES JOHN CONWAY HARRISON, ADAIR and DOYLE concur.